**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KIMBERLY FUNKE AND MARSHALL
WALKER, individually, and on behalf of all
others similarly situated,

                                    Plaintiffs,

    vs.

HUB ENTERPRISES, INC.

                                    Defendant.

---

Civil Action No.
5:11-cv-01274
(MAD)(DEP)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

**SMITH, SOVIK, KENDRICK & SUGNET, P.C.**
Steven Ward Williams, Esq.
Brady J. O'Malley, Esq.
*Attorneys for Plaintiffs*
250 South Clinton Street, Suite 600
Syracuse, NY 13202-1252
Tel.: (315) 474-2911

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................1

SUMMARY OF THE ARGUMENT ...............................................................................3

ARGUMENT...................................................................................................:...........6

POINT I

   THE FLUCTUATING WORKWEEK EXCEPTION TO THE NORMAL
   OVERTIME REQUIREMENTS OF THE FLSA
   ..........................................................................................................................6

   1.  The Four Prerequisites to an Employer's use of the FWW Exception
   ..........................................................................................................................6

   2.  HUB carries the Burden of Proving Compliance with the FWW's Four
       Prerequisites, because the FWW is an Exception to the FLSA's Overtime
       Requirements that is Narrowly Construed against Employers
   ..........................................................................................................................7

POINT II

   HUB VIOLATED THE FWW'S FIXED SALARY REQUIREMENT
   ..........................................................................................................................8

   1.  HUB's "Holiday Pay" Policy is a Clear Violation of the FWW's Fixed Salary
       Requirement and an Independent Basis for Partial Summary Judgment
   ..........................................................................................................................8

   A. Recent Cases addressing the FWW have made it Clear that "Holiday Pay"
      and other Non-Overtime Premium Payments Violate the FWW's Fixed Salary
      Requirement
   ..........................................................................................................................9

   B. The United States Department of Labor has also Declared that "Holiday Pay"
      and other Non-Overtime Premium Payments Violate the FWW Exception
   ........................................................................................................................12

   C. The Fact that HUB Paid Salaried Investigators Non-Overtime Premiums for
      Holiday Work is Irrefutable, and Leaves no Material Issue of Fact as to whether
      HUB Complied with the FWW's Fixed Salary Requirement
   ........................................................................................................................13

i

    *i.   HUB's Holiday Premiums cannot be Construed as "Overtime" Premiums, because they were paid Regardless of the Number of Hours worked during the week*

.............................................................................................................14

POINT III

    HUB FAILED TO SATISFY THE FWW'S "CLEAR MUTUAL UNDERSTANDING" REQUIREMENT

.............................................................................................................15

    1. It is HUB's Burden to Prove that Plaintiffs had a "Clear Mutual Understanding" of the FWW

.............................................................................................................16

    2. The "Clear Mutual Understanding" Requirement is Governed by an Objective Standard in FLSA Collective Actions

.............................................................................................................17

    3. HUB must Prove that its Policy was to Provide Salaried Investigators with a a "Clear Mutual Understanding" of the FWW *at the time of Hire*

.............................................................................................................17

    4. HUB's "Holiday Pay" policy is, on its own, a Violation of the FWW, and it also Prevented Plaintiffs from having a "Clear Mutual Understanding" of the FWW

.............................................................................................................20

    5. HUB's Minimum Billable Hour Requirements Violate the FWW's "Clear Mutual Understanding" Requirement, and Contravene the Fundamental Purpose of the FLSA's Overtime Provisions

.............................................................................................................21

CONCLUSION..............................................................................................27

ADDENDUM A

# TABLE OF AUTHORITIES

### *Cases*

*Adams v. City of Manchester*, 2012 WL 3242078, at *4 (E.D.Mo. Aug. 7 2012) ............22

*Adeva v. Intertek USA, Inc.*, 2010 WL 97991 (D.N.J. Jan. 11, 2010) ...6, 10, 13, 14, 15, 17

*Ayers v. SGS Control Services, Inc.*, 2007 WL 646326 (S.D.N.Y. 2007).....7, 8, 10, 13, 13

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) ........................27

*Brantley v. Inspectorate America Corp.*, 2011 WL 5190122 (S.D.Tex. Oct. 17, 2011) ....9, 14

*Brumley v. Camin Cargo Control, Inc.*, 2010 WL 1644066 (D.N.J. Apr. 22, 2010) ..11, 14

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984).................................................7

*Dingwall v. Friedman Fisher Assoc.*, 3 F.Supp.2d 215 (N.D.N.Y. 1998) ...5, 7, 16, 21, 22, 23, 24

*Dooley v. Liberty Mutual Ins. Co.*, 369 F.Supp.2d 81 (D. Mass. 2005)..8-9, 11, 13, 14, 15, 20, 21

*Evans v. Lowe's Home Centers, Inc.*, 2006 WL 1371073 (M.D.Pa. May 18, 2006) ........17

*Grant v. Shaw Group, Inc.*, 2012 WL 124399 (E.D.Tenn. Jan. 17, 2012) ........................16

*Hasan v. GPM Investments, LLC*, 2012 WL 3725693 (D.Conn. Aug. 27, 2012) .......25, 26

*Hunter v. Sprint Corp.*, 453 F.Supp.2d 44 (D.D.C. 2006)......................................16, 23, 24

*Johnson v. City of Columbia, S.C.*, 949 F.2d 127, 129-30 (4th Cir. 1991)........................7

*Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008) ........................7

*Missel v. Overnight Motor Transp. Co.*, 40 F.Supp.174 (D.Md. 1941) .....................26, 27

*O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003)........5, 6, 7, 8, 9, 11, 12, 15, 17

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) ...........................................4

*Reiseck v. Universal Communications of Miami*, 591 F.3d 101 (2d Cir. 2010).................7

*Switzer v. Wachovia Corp.*, 2012 WL 3685978 (S.D.Tex. Aug. 24, 2012)................. 11-12

*Valerio v. Putnam Assoc., Inc.*, 173 F.3d 35 (1st Cir. 1999)...............................................8

## *Other Authorities*

H.R. Rep. No. 101-260, at 8-9 (Sept. 26, 1989) ...................................................................4

76 Fed. Reg. 18,832 (Apr. 5, 2011), 2011 WL 1231289, at *18848-18851................12, 14

29 C.F.R. § 778.114...........3, 4, 5, 6, 7, 8, 10, 11, 12, 15, 16, 17, 19, 21, 23, 24, 25, 26, 27

## *Statutes*

29 U.S.C. § 202.......................................................................................................................3

29 U.S.C. § 207(a) ............................................................................................................4, 6

## PRELIMINARY STATEMENT

The instant motion seeks partial summary judgment, based on two distinct and independent reasons, holding that Defendant HUB Enterprises, Inc. ("HUB") cannot rely upon the fluctuating workweek exception to the FLSA's normal overtime requirements in its defense of this action.  This motion does not seek the Court's determination regarding any other issues of liability or damages.

## STATEMENT OF FACTS

HUB is an investigation company that performs surveillance and other investigative tasks for insurance companies.  It bills insurance companies for the hours its investigators spend performing investigative assignments.  The investigators comprise the plaintiffs in this matter.

Although HUB's salaried investigators are not exempt from the FLSA's overtime requirements, for many years HUB has relied on a regulatory exception to the FLSA to avoid the statute's requirement that the investigators receive "time and a half" for overtime work.  More specifically, HUB has relied on the fluctuating workweek ("FWW") to pay investigators a salary plus only "half time" for overtime. The FWW exception to the FLSA is commonly referred to as "Chinese overtime."  When hiring salaried investigators, however, HUB did not adequately explain the FWW to them.  In point of fact, HUB provided newly hired investigators with only a "standard offer letter" to explain how they would be compensated.  There was also a vague reference to overtime and salary at the bottom of page 18 of HUB's Employee Handbook  These two documents were, at best, confusing, and at worst, intentionally misleading with regard to how the investigators would be paid.  Further, the documents led the investigators to

1

conclude that they must work a minimum of forty hours per week to be entitled to their weekly salary, which is entirely inconsistent with the lawful use of the FWW exception.

Not only did HUB's hiring documents indicate that the investigators had to work a minimum of forty hours per week to receive their weekly salary, but communications from HUB supervisors to investigators after they were hired were even more demanding. More specifically, after investigators accepted employment with HUB, they were repeatedly advised that they must "bill" a minimum of forty to forty-two hours per week in order avoid demotion to part-time hourly status, and in order for the company to remain profitable. Because certain work preformed by investigators cannot be charged to HUB's clients (e.g., travel time), the investigators had to work far in excess of forty-two hours per week in order to capture forty-two hours of billable time. Consequently, investigators were directed to work forty-six to fifty hours per week. Moreover, HUB supervisors repeatedly communicated to investigators that if they did not bill a minimum of forty to forty-two hours per week, they would be demoted to part-time employees. Such minimum hour requirements are contrary to the lawful use of the FWW exception, as they allow employers to enjoy the benefit of the exception (*i.e.*, paying only "half time" for overtime work) while not experiencing the detriment of the exception (*i.e.*, having to pay an employee his fixed weekly wage even in weeks where he works less than forty hours).

Lastly, HUB claims that it paid salaried investigators a fixed weekly salary regardless of the number of hours worked in a given week. Contrary to that claim, however, HUB paid salaried investigators different rates depending on what days they worked. More specifically, if an investigator worked on a holiday, he was paid a

2

premium rate of compensation; this resulted in the investigator's weekly straight time pay fluctuating from week to week, which is completely inconsistent with the provisions of the FWW.

The FWW is a regulatory exception to the FLSA, and it is therefore incumbent upon the defendant to establish that it satisfied the prerequisites to relying on that exception. As is illustrated by the case law below, when an employer pays its employees different rates for different days worked (such as holidays), it is barred from relying on the FWW exception to the FLSA. Further, when an employer does not clearly explain that its employees will receive the same fixed salary each week, regardless of whether they work more or less than forty hours, the employer will not be permitted to rely on the FWW exception. In the present matter, HUB not only failed to adequately explain to investigators that salaries under the FWW are "in amounts agreed upon by the parties as adequate straight-time compensation for *long work weeks as well as short ones*." 29 C.F.R. § 778.114(c)(emphasis added), but it affirmatively required and demanded that the investigators bill a minimum of forty to forty-two hours per week or face demotion. Accordingly, HUB is barred from relying on the FWW exception to the FLSA's overtime pay requirements as a matter of law.

## SUMMARY OF THE ARGUMENT

The FLSA was enacted to eliminate labor conditions that are detrimental to the health, efficiency, and general welfare of workers. 29 U.S.C. § 202. As President Roosevelt explained when the FLSA was before Congress, the statute was created to guarantee workers "a fair day's pay for a fair day's work" because "[a] self-supporting and self-respecting democracy can plead no . . . economic reason for chiseling workers'

wages or stretching workers' hours." H.R. Rep. No. 101-260, at 8-9 (Sept. 26, 1989).  In

furtherance of those purposes, the FLSA's overtime provisions are intended to protect

workers from long hours of work and to "spread employment to avoid the extra wage."

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)("although overtime

was not flatly prohibited, financial pressure was applied to spread employment . . . and

workers were assured additional pay to compensate them for the burden of a workweek

beyond the hours fixed in the act . . . [r]eduction of hours was a part of the plan from the

beginning").  Pursuant to the FLSA, employees must be compensated at one and one-half

(1.5) times their regular rate of pay for each hour worked in excess of 40 per week.  29

U.S.C. § 207(a).   Thus, unless an employee is exempt from the FLSA's overtime

provisions, she must be paid overtime at a wage rate of one and one-half (1.5) times her

regular rate of pay, *i.e.*, "time and a half."  29 U.S.C. § 207(a).

In this case, there is no dispute that Plaintiffs were ***not*** exempt from the FLSA's

overtime provisions during their employment as salaried investigators for HUB.  Indeed,

according to HUB's Employee Handbook, Plaintiffs were "non-exempt salaried

employees." (Exhibit **"E"**, § 21).  As non-exempt employees, Plaintiffs were entitled to

"time and a half" for overtime.  *See* 29 U.S.C. § 207(a).  It is undisputed, however, that

HUB did not pay Plaintiffs time and a half for overtime.  (*See id.*; Exhibit **"F"**, ¶ 8).

HUB alleges it was not required to pay Plaintiffs time and a half for overtime.

(*See* Exhibit **"G"**, pg. 1).   HUB claims an exception to the FLSA's overtime

requirements because it purportedly utilized the fluctuating workweek ("FWW") method

of compensating Plaintiffs, which is set forth in 29 C.F.R. § 778.114.  (*See, id.*).  The

FWW method is an exception to the FLSA's overtime requirements, and it allows

employers to pay employees "half time" for overtime, **but only if four requirements are satisfied**. 29 C.F.R. § 778.114; *Dingwall v. Friedman Fisher Assoc.*, 3 F.Supp.2d 215, 221 (N.D.N.Y. 1998). Where all four prerequisites are satisfied, the FWW allows employers to pay non-exempt employees a fixed salary for all hours worked each week, and half of their regular rate of pay for each hour worked over 40 per week. An employee's "regular rate" of pay under the FWW is "calculated anew each week by dividing the actual number of hours worked that week into the fixed salary amount." [1] *O'Brien v. Town of Agawam*, 350 F.3d 279, 287 (1st Cir. 2003); 29 C.F.R. § 778.114.

Attached to the instant motion are admissions of HUB; time and payroll records; e-mails; company policies; and Affidavits showing that HUB plainly failed to satisfy at least two of the FWW's four requirements, and therefore failed to qualify for the FWW exception as a matter of law. Accordingly, Plaintiffs respectfully submit that they are entitled to partial summary judgment.

The instant motion has been filed prior to the completion of discovery because it involves incontrovertible facts and pure questions of law. HUB's non-compliance with the FWW is plainly established by the record before the Court on this motion; and there is nothing that further discovery could reveal to refute the attached documentary evidence, which clearly establishes HUB's failure to comply with the FWW's requirements. Accordingly, no further discovery is necessary with regard to the limited issue of whether HUB qualified for the FWW exception, and this case is ripe for partial summary judgment.

---

[1] HUB worked Plaintiffs so many hours each week at such a low salary that it had to use a slightly different formula in order to avoid paying an overtime wage that was less than minimum wage. Thus, HUB calculated Plaintiffs' regular rate of pay by dividing their fixed weekly salary by 40 hours each week, rather than the number of hours they actually worked in any given week. (Exhibit **"F"**, ¶ 8).

**ARGUMENT**

I.   **THE FLUCTUATING WORKWEEK EXCEPTION TO THE NORMAL OVERTIME REQUIREMENTS OF THE FLSA**

Under the FLSA, all non-exempt employees must be paid for overtime "at a rate not less than one and one-half times [their] regular rate" of pay.  29 U.S.C. § 207(a).   If certain requirements are satisfied, however, an employer may pay non-exempt employees "half time" for overtime, rather than "time and a half."  29 C.F.R. § 778.114.  This **exception** to the normal requirements of the FLSA is called the fluctuating workweek ("FWW") method.  The FLSA does not explicitly permit the FWW, but the United States Department of Labor approved of its limited use when it promulgated 29 C.F.R. § 778.114.

1.    **The Four Prerequisites to an Employer's use of the FWW Exception**

In order to lawfully implement the FWW method, an employer must satisfy the following requirements:  (1) its employees' hours must fluctuate from week to week; (2) its employees must receive a fixed amount as straight time pay that does not vary with the number of hours worked during the week (excluding overtime premiums); (3) the fixed amount received by the employees must provide compensation every week at a regular rate that is at least equal to the minimum wage; and (4) the employer and employees must share a clear mutual understanding that the employer will pay that fixed salary regardless of the number of hours worked per week, no matter how many or few.  29 C.F.R. § 778.114(a); *O'Brien*, 350 F.3d at 289.  These requirements are not merely guidelines, nor can they be gradually implemented by the employer – **they are "*prerequisites* for applying the FWW method."**  *Adeva v. Intertek USA, Inc.*, 2010 WL 97991, at *2 (D.N.J. Jan. 11, 2010)(emphasis added); 29 C.F.R. § 778.114(c)(referring to the FWW

6

conditions as "legal prerequisites").    Indeed, "an employer may not simply elect to pay the lower overtime rate under § 778.114.  The regulation requires that [its] conditions be satisfied *before* an employer may do so."  *O'Brien*, 350 F.3d at 288 (emphasis added).

### 2.    HUB Carries the Burden of Proving Compliance with the FWW's Four Prerequisites, because the FWW is an *Exception* to the FLSA's Overtime Requirements that is *Narrowly Construed against Employers*

The remedial nature of the FLSA warrants a broad interpretation of its provisions in order to ensure that its remedial goals are given "the widest possible impact on the national economy."    *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)(citations omitted).    Therefore, exceptions to the FLSA, such as the FWW, are "interpreted narrowly against the employer."  *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326, at *9 (S.D.N.Y. 2007)(citations omitted); *see also, Reiseck v. Universal Communications of Miami*, 591 F.3d 101, 102 (2d Cir. 2010).[2]

This Court has held that the FWW method is "an exception to the normal rights of the employee and thus the employer bears the burden of proving that all the requirements for applying the method are present." *Dingwall*, 3 F.Supp.2d at 221.  Thus, HUB carries the burden of establishing that it satisfied the four prerequisites to the FWW method. HUB cannot satisfy this burden, because its overtime policies and practices for Plaintiffs and all other non-exempt salaried investigators violated at least two of the FWW's requirements: (i) the "fixed salary" requirement and (ii) the "clear mutual understanding" requirement.  *See* 29 C.F.R. § 778.114.  As shown below, HUB's failed application of the FWW is in direct conflict with the plain language of 29 C.F.R. § 778.114, the applicable case law, and the United States Department of Labor's interpretation of the regulation.

---

[2] *See also, Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008); *Johnson v. City of Columbia, S.C.*, 949 F.2d 127, 129-30 (4th Cir. 1991)("[e]xemptions from or exceptions to [the FLSA's] requirements are to be narrowly construed against the employer").

## II.   HUB VIOLATED THE FWW'S FIXED SALARY REQUIREMENT

One of the four requirements under the FWW is that employees must "receive a fixed salary that does not vary with the number of hours worked during each workweek (excluding overtime premiums)." 29 C.F.R. § 778.114(a). In other words, employees paid under the FWW must receive a "fixed amount as straight time pay for whatever hours [they are] called upon to work in a workweek, whether few or many," exclusive of overtime payments. *Id.* (emphasis added); *Ayers*, 2007 WL 646326, at *9 ("the 'fluctuating workweek' method applies when an employee 'is paid a fixed weekly salary regardless of how many hours the employee may work in a given week'") (*citing Valerio v. Putnam Assoc., Inc.*, 173 F.3d 35, 39 [1st Cir. 1999]). As explained by the First Circuit Court of Appeals, "By the plain text of § 778.114, it is not enough that the [employees] receive a fixed *minimum* sum each week; rather, to comply with the regulation, the [employer] must pay each [employee] a fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." *O'Brien*, 350 F.3d at 228; *accord, Ayers*, 2007 WL 646326, at *9.

### 1.   HUB's "Holiday Pay" Policy is a Clear Violation of the FWW's Fixed Salary Requirement and an Independent Basis for Partial Summary Judgment

Under the FWW, "regardless of the number of hours worked in a particular week, the employee's 'straight time pay' cannot change . . . " *Ayers*, 2007 WL 646326, at *9. Under this principle, courts have consistently held that "premium payments," in addition to the employee's salary and overtime pay, violate the FWW's requirement that the employee be paid "a fixed amount as straight time pay for whatever hours he is called upon to work." 29 C.F.R. § 778.114; *see Dooley v. Liberty Mutual Ins. Co.*, 369

F.Supp.2d 81, 85 (D. Mass. 2005) (citations omitted)(explaining that the FWW regulation "refers to the exclusion only of 'overtime premiums' and not 'premium pay' from the term 'fixed salary'"). Therefore, payments that cause "non-overtime compensation to vary from week to week" violate the FWW's fixed salary requirement. *See Brantley v. Inspectorate America Corp.*, 2011 WL 5190122, at *8 (S.D.Tex. Oct. 17, 2011). For example, "an employer's payment of premiums for off-shore, day-off or holiday work assignments . . . violate[s] the FLSA requirement that the employee receive a fixed salary." *Id.* at *7. Moreover, the payment of "shift premiums" precludes application of the FWW, because it causes employees' weekly non-overtime pay to vary. *See Dooley*, 369 F.Supp.2d at 85-86; *O'Brien*, 350 F.3d at 288-89.

### A. Recent Cases addressing the FWW have made it Clear that "Holiday Pay" and other Non-Overtime Premium Payments Violate the FWW's Fixed Salary Requirement

The FWW's incompatibility with non-overtime "premium payments" was first established by the First Circuit Court of Appeals in *O'Brien*, 350 F.3d 279. In *O'Brien*, there was no question that the defendant town paid the plaintiff police officers 1/52 of their base salary each week, irrespective of the number of hours worked. *Id.* at 288. But that did not end the First Circuit's inquiry as to whether the officers received a "fixed amount as straight time pay" each week, as required by the FWW. Under the parties' Collective Bargaining Agreement ("CBA"), any officer required to work a nighttime shift received money termed "additional compensation." *Id.* at 288-89. The CBA also provided that officers would receive extra pay for every hour worked beyond eight hours in a day, and every hour worked on otherwise off-duty time. *Id.* at 289. The CBA referred to these premium payments as "contractual overtime." *Id.* The police officers

9

alleged that, due to these additional payments, the town failed to satisfy the FWW's fixed salary requirement. The First Circuit agreed, and held that the officers did not receive "a fixed amount as straight time pay for whatever hours [they were] called upon to work in a workweek, whether few or many." *Id.* The court reasoned that the officers received "more or less straight-time pay" depending on how many "nighttime" or "off-duty" hours they worked in a given week. *Id.* (citations omitted). The town argued that it was "simply paying the officers more generously than the FLSA requires." *Id.* at 290. In rejecting that argument, the court stated: "We are unpersuaded. Section 778.114 applies only . . . [where] the employee's fixed salary is compensation for however many hours the employee works during the week." *Id.*; *see also, Adeva*, 2010 WL 97991, at *3 ("If the regulation merely required that employees receive a minimum salary every week, which could be increased by such bonuses, then Defendants' argument would have substantial force. The regulation, however, contains no such thing"). Thus, the court held that the town failed to qualify for the FWW exception as a matter of law.

In *Ayers*, the Southern District of New York held that inspectors did not receive a fixed salary, in violation of the FWW, because they received lump-sum "day-off pay" and "sea pay" for working on their days off and on off-shore vessels. *Ayers*, 2007 WL 646326, at *8-10. Thus, the **plaintiffs were granted partial summary judgment** on the ground that the defendant failed to properly implement the FWW exception as a matter of law. *Id.* at *14.

Likewise, in *Adeva*, the court held that "shift premiums" preclude use of the FWW. 2010 WL 97991, at *2-3. To that end, the court explained: "The record demonstrates that plaintiffs' compensation for non-overtime hours varied, depending

upon earned off-shore pay, holiday pay or day-off pay. The Court is convinced that due to such payments, plaintiffs cannot receive the fixed salary required to apply the FWW." *Id.* (emphasis added). Accordingly, **the Court held that the defendant's use of the FWW was invalid as a matter of law and granted summary judgment to the plaintiffs** on that issue. *Id.* at \*4.

Similarly, in *Brumley v. Camin Cargo Control, Inc.*, 2010 WL 1644066 (D.N.J. Apr. 22, 2010), the plaintiffs were paid "day-off pay" and "holiday pay" in addition to their regular salary and overtime. *Id.* at \*6. The court held that such a compensation scheme results in the absence of a fixed salary, because any variation in straight time pay (i.e., non-overtime pay) precludes use of the FWW as a matter of law. *Id.* Thus, the defendant's use of the FWW was held improper as a matter of law. *Id.*

As established by the above cases, an employer's payment of premiums that are not overtime premiums violates the FWW. This principle was further illustrated in *Dooley*, 369 F.Supp.2d 81, where the Court addressed Liberty Mutual's practice of paying an hourly wage for "Saturday work," in addition to the employees' weekly salary. *Dooley*, 369 F.Supp.2d at 85. As in the above cases, the question before the court in *Dooley* was "whether the payment of such premiums precludes the application of the FWW method." *Id.* The court held that such premium pay violates the fixed salary requirement of the FWW, because an employee does not receive a "fixed salary regardless of hours worked" if he or she receives premium pay for certain weeks but not others. *Id.* at 85. Indeed, 29 C.F.R. § 778.114 "refers to the exclusion only of 'overtime premiums' and not 'premium pay' from the term 'fixed salary.'" *Id.* (emphasis added) (*citing O'Brien*, 350 F.3d at 288); *see also, Switzer v. Wachovia Corp.*, 2012 WL

3685978, at *3 (S.D.Tex. Aug. 24, 2012)("[C]ases such as *O'Brien* . . . involve additional pay that is based on the number of hours worked. In such situations, for example, an employee who worked four hours on a holiday would receive more additional compensation than an employee who worked two hours on the holiday. The Court agrees that such additional pay based on the number of hours the employee worked would be inconsistent with the FWW method").

> **B.  The United States Department of Labor has also Declared that "Holiday Pay" and other Non-Overtime Premium Payments Violate the FWW Exception**

In April 2011, the DOL issued a final rule, "Updating Regulations Issued Under the Fair Labor Standards Act," a copy of which is attached as **Addendum A**. *See* 76 Fed. Reg. 18,832 (Apr. 5, 2011). The DOL's rule rejected a proposed rule that would have allowed non-overtime bonuses and premium pay incentives under the FWW method.[3] The DOL explained its position: "While the Department continues to believe that the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the fluctuating workweek method of computing overtime under section 778.114." *Id.*

As for the policy considerations underlying its decision, the DOL explained: "As several commentators noted, the proposed regulation could have had the unintended effect of permitting employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments, potentially resulting in wide disparities in employees' weekly pay depending on the particular hours

---

[3] Although the DOL's Final Rules are not controlling authority, "the Secretary's interpretations have the power to persuade, if lacking the power to control, as they constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *O'Brien*, 350 F.3d at 298.

worked. It is just this type of wide disparity in weekly pay that the fluctuating workweek was intended to avoid by requiring the payment of a fixed amount as straight time pay for all hours in the workweek, whether many or few." *Id.* The DOL noted that its position was consistent with the applicable case law: "the courts have not been unduly challenged in applying the current regulation to additional bonus and premium payments."[4]

> **C.   The Fact that HUB Paid Salaried Investigators Non-Overtime Premiums for Holiday Work is Irrefutable, and Leaves no Material Issue of Fact as to whether HUB Complied with the FWW's Fixed Salary Requirement**

Section 25 of HUB's Employee Handbook, which was provided to Plaintiffs when they were hired, provides that "Regular full-time salary employees who are regularly scheduled to work a minimum of forty (40) hours per week are eligible to receive regular pay for recognized holidays . . ." (Exhibit **"E"**, § 25). Likewise, Section 49 of the Employee Handbook provides that regular full-time salary employees are eligible for holiday pay. (*Id.*, § 49). In short, HUB paid its salaried investigators extra compensation, in addition to their salaries, for work performed on recognized holidays. This fact was admitted by HUB's payroll manager, Shelia Viator, who stated in a January 28, 2011 e-mail that HUB paid "double time" for holiday hours. (Exhibit **"I"**). This e-mail was provided to Plaintiffs' counsel by HUB's counsel in response to Plaintiffs' First Request for Production of Documents. The attached payroll records confirm Ms. Viator's admission that HUB paid salaried investigators "double time" on holidays, in addition to their salaries and overtime. (*See* Exhibits **"J"**, **"K"**).

Because Plaintiffs were salaried employees, the term "double time" meant an

---

[4] The DOL then proceeded to cite *O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003); *Adeva v. Intertek*, 2010 WL 97991 (D.N.J. 2010); *Dooley v. Liberty Mutual Ins. Co.*, 369 F.Supp.2d 81 (D. Mass. 2005); *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326 (S.D.N.Y. 2007).

additional payment of their regular rate of pay (on top of their salary) for each hour worked on a holiday. Exhibit **"K"** contains five examples that break down the attached time and payroll records and illustrate HUB's payment of a "double time" premium rate for holidays. Below are two examples of the illustrations contained in Exhibit **"K"**:

**Example 1:**   Plaintiff Andrzej Iciak's "regular rate" of pay was $17.30 per hour.[5] He worked 9 hours and 54 minutes (9.9 hours) on 7/4/11 (Independence Day). Therefore, in addition to his biweekly salary and overtime pay, he received $171 (9.9 x $17.30) in "holiday pay" in his 7/27/11 paycheck. (*See* Exhibit **"K"**, Example 1).

**Example 2:**   Plaintiff Alois Babak's "regular rate" of pay was $14.42 per hour.[6] He worked 12 hours and 25 minutes (12.42 hours) on 12/31/10 (New Year's Eve). Therefore, in addition to his biweekly salary, he received $179 (12.42 x $14.42) in "holiday pay" in his 1/12/11 paycheck. (*See* Exhibit **"K"**, Example 2).

These are the exact type of premium payments that the above cases and the DOL have found to be a plain violation of the FWW's "fixed salary" requirement.[7]

> i.   *HUB's Holiday Premiums cannot be Construed as "Overtime" Premiums, because they were paid Regardless of the Number of Hours worked during the week*

Critically, the attached payroll records show that it was HUB's policy to provide salaried investigators with a premium rate for working a holiday, even ***during a workweek of less than 40 hours***. For example, Plaintiff Alois Babak received $179 in "holiday pay" for working on 12/31/10 (New Year's Eve), despite his having worked less

---

[5] Plaintiff Iciak's regular rate of pay is determined by dividing his biweekly salary of $1,384.62 by 80 hours ($1,384.61 ÷ 80 = $17.30 per hour). (*See* Exhibit **"K"**, Example 1).
[6] Plaintiff Babak's regular rate of pay is determined by dividing his biweekly salary of $1,153.85 by 80 hours ($1,153.85 ÷ 80 = $14.42 per hour). (*See* Exhibit **"K"**, Example 2).
[7] *See O'Brien*, 350 F.3d 279; *Adeva*, 2010 WL 97991; *Dooley*, 369 F.Supp.2d 81; *Ayers*, 2007 WL 646326; *Brantley*, 2011 WL 5190122; *Brumley*, 2010 WL 1644066; 76 FR 18832-01, 2011 WL 1231289, at 18849-18851.

than 40 hours during the week of 12/27/10 – 1/2/11.  (*See* Exhibit **"S"**, Example 1).  As another example, Plaintiff Lisa Baker received $110 in "holiday pay" for working on 5/31/10 (Memorial Day), despite her having working less than 40 hours during the week of 5/31/10 – 6/6/10.  (*See id.*, Example 2).

HUB's payment of holiday premiums during workweeks of less than 40 hours eviscerates any argument that these payments could somehow be construed as "overtime" premiums.  *See O'Brien*, 350 F.3d at 289 ("for purposes of the FLSA, all hours worked under the statutory maximum [40] are non-overtime labor"); *Dooley*, 369 F.Supp.2d at 86 ("the payment of a premium rate for Saturday work when less than 40 hours have been worked precludes application of the fluctuating workweek method").

HUB's compensation policy did ***not*** provide for a "fixed amount as straight time pay" each week.  On the contrary, HUB's policy was to provide salaried investigators with varying straight time pay depending on whether holiday hours were worked in a given week – a direct violation of the FWW's fixed salary requirement.  *See O'Brien*, 350 F.3d at 288 (holding that a fixed minimum salary is not the same as a fixed amount as straight time pay); *see also, Adeva*, 2010 WL 97991, at *3 (same holding).

The payroll records attached as Exhibit **"J"** clearly show HUB's payment of "Holiday Pay" to salaried investigators, which irrefutably establishes HUB's failure to implement a compensation policy that guaranteed a fixed amount of straight time pay each week, in violation of the second requirement of 29 C.F.R. § 778.114.  Thus, partial summary judgment as to HUB's failure to qualify for the FWW is appropriate.

### III.   HUB FAILED TO SATISFY THE FWW'S "CLEAR MUTUAL UNDERSTANDING" REQUIREMENT

The fundamental principle underlying the FWW is fixed weekly pay for

"whatever hours [the employee] is called upon to work in a workweek, whether few or many." C.F.R. § 778.114(a). For that reason, employees must have a "clear mutual understanding" that their salary is intended to pay for fluctuating hours, **rather than for working 40 hours or some other fixed weekly work period.**" *Id.*; *see also Hunter v. Sprint Corp.*, 453 F.Supp.2d 44, 59 n. 17 (D.D.C. 2006)(emphasis added) ("the regulation requires that the employee clearly understand that the salary covers whatever hours the job may demand in a particular workweek *and* that the employer pay the salary *even though the workweek is one in which a full schedule of hours is not worked*").

### 1.   It is HUB's Burden to Prove that Plaintiffs had a "Clear Mutual Understanding" of the FWW

This Court has held that it is the employer's burden to prove compliance with **all** of the FWW's requirements. *Dingwall*, 3 F.Supp.2d at 221. Therefore, HUB carries the burden of showing that it provided Plaintiffs with a clear understanding that their salaries were intended as straight time pay for *any amount of hours per week, whether many or few.* 29 C.F.R. § 778.114; *see also Hunter*, 453 F.Supp.2d at 60 ("among the reasons the FWW method cannot be used [in this case] . . . is that there was no 'clear and mutual understanding'. . . that [defendant] would pay [plaintiff] the fixed salary if he worked less than a full-time schedule in a particular week"); *see also Grant v. Shaw Group, Inc.*, 2012 WL 124399, at *9 (E.D.Tenn. Jan. 17, 2012)("it is the employer's burden to demonstrate a 'clear mutual understanding' between the parties that the fixed salary received by the plaintiff is compensation for the hours the plaintiff worked during each workweek, whatever their number, rather than for working forty hours or another fixed weekly workweek").

16

**2.      The "Clear Mutual Understanding" Requirement is Governed by an
Objective Standard in FLSA Collective Actions**

In FLSA collective actions, the "clear mutual understanding" requirement is an

***objective*** inquiry – not an individualized inquiry.[8]  *Evans v. Lowe's Home Centers, Inc.*,

2006 WL 1371073, at *4 (M.D.Pa. May 18, 2006)(clear mutual understanding

requirement does not require a fact specific, individualized inquiry in collective actions).

Under this objective standard, it is HUB's burden to establish that a reasonable person

would have gained a clear understanding of the FWW based on the explanation of the

FWW that HUB provided to salaried investigators at the commencement of their

employment.

**3.      HUB must Prove that its Policy was to Provide Salaried Investigators
with a "Clear Mutual Understanding" of the FWW *at the time of Hire***

It is not enough for HUB to demonstrate that Plaintiffs, through the course of their

employment, ***eventually*** developed an understanding of how they were being

compensated.   On the contrary, HUB must prove that it established a clear mutual

understanding with Plaintiffs regarding the FWW at the ***commencement of their***

***employment***, because a clear mutual understanding is one of the four ***prerequisites*** for

applying the FWW method.   Indeed, the regulation itself refers to the requirements as

"legal prerequisites."   29 C.F.R. § 778.114(c); *see also, O'Brien*, 350 F.3d at 288

(emphasis added) ("an employer may not simply elect to pay the lower overtime rate

under § 778.114.   The regulation requires that [its] conditions be satisfied ***before*** an

employer may do so"); *Adeva*, 2010 WL 97991, at *2.   Therefore, unless HUB had a

---

[8] If the clear mutual understanding analysis required an inquiry into the subjective understanding of each and every Plaintiff, *all* plaintiffs in *all* FLSA collective actions based on FWW violations would need to provide testimony as to their subjective understanding of their employer's overtime policy.   That is not the law.

procedure in place to ensure that a reasonable person would have a clear understanding regarding the FWW at their time of hire, the FWW exception does not apply in this case as a matter of law.

The only explanation of compensation that HUB provided Plaintiffs at the commencement of their employment was contained in the offer letters attached as Exhibit **"M"**, and the Employee Handbook attached as Exhibit **"E"**. Indeed, during discovery Plaintiffs requested that HUB identify and/or produce all communications and/or documents that it provided to each and every Plaintiff relating to their compensation. (*See* Exhibits **"T"**, **"U"**). In response, HUB did not provide, identify or otherwise describe a single document or communication that explained its compensation policy to Plaintiffs *at their time of hire* other than the offer letters attached as Exhibit **"M"** and Employee Handbook attached as Exhibit **"E"**.

According to HUB Vice President David Buchanan, the offer letters attached as Exhibit **"M"** were "standard offer letters" that HUB issued to investigators paid pursuant to the FWW. (Exhibit **"F"**, ¶ 9). With respect to compensation, the standard offer letters merely stated: "Your base salary is compensation for all hours worked in a given week. Hours worked in excess of 40 will be compensated at an additional ½ time, as we are compensating you for all hours worked based on your salary." (Exhibit **"M"**). A reasonable person would conclude that to be "compensated at an **additional** ½ time" rate meant he would be paid time and a half for overtime. If HUB truly wanted to communicate to Plaintiffs that they would receive only half time compensation for overtime, HUB would not have included the word "additional" before "½ time" in the offer letter.

18

In short, based on this vague and misleading explanation, a reasonable person could not be expected to gain a "clear mutual understanding" that their "fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 C.F.R. § 778.114(a). Moreover, the standard offer letter did not contain any language that would have provided a reasonable person with "an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." *Id.* The description of compensation contained in the Employee Handbook likewise failed to explain the basic concept of the FWW's "fixed salary" component. (Exhibit "**E**", § 21). Indeed, merely stating that an employee's salary is for "all hours" is far different than providing the employee with a *clear* understanding that "he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, **whether few or many**." 29 C.F.R. § 778.114 (emphasis added). The attached Affidavits explain in detail why the vague and misleading language contained in HUB's offer letter and Employee Handbook did nothing to provide salaried investigators with the "clear mutual understanding" that 29 C.F.R. § 778.114 requires. (*See* Exhibit "**N**").

Because the clear mutual understanding requirement must be satisfied at the time of hire, HUB cannot rely on a belated (i.e., after Plaintiffs commenced their employment with HUB) explanation of the FWW to show that a clear mutual understanding existed. For example, on November 2, 2011, HUB was served with the Complaint in this case. (Exhibit "**A**"). That same day, HUB issued a memorandum to all salaried investigators

in an attempt to clearly explain, for the first time, HUB's compensation system. (Exhibit "**P**"). Because the memorandum was provided long after Plaintiffs commenced work for HUB (or, for some Plaintiffs, after they stopped working for HUB), it cannot be considered on the issue of whether HUB provided Plaintiffs with a clear understanding of the FWW at the time of hire. HUB was required to provide Plaintiffs with a "clear explanation" of its compensation policy when they were hired – not in response to a lawsuit. HUB's leading Plaintiffs to believe they would be paid time and a half for overtime, and then, after Plaintiffs accepted the job, explaining to them that they would only receive half time for overtime is akin to the old "bait and switch" scams and is patently unfair.

### 4. HUB's "Holiday Pay" Policy is, on its own, a Violation of the FWW, and it also Prevented Plaintiffs from having a "Clear Mutual Understanding" of the FWW

As discussed above, the *Dooley* court held that premium payments for Saturday work are incompatible with the FWW. 369 F.Supp.2d at 86. Liberty Mutual argued, however, that the FWW was still applicable to employees who had never worked on a Saturday, because they had received a fixed salary. In rejecting that argument, the Court aptly explained:

> **Even though those employees may have, in fact, received a fixed salary, they did not have a " 'clear mutual understanding' that the employer *will pay* that fixed salary regardless of hours worked," because Liberty Mutual *would not have* paid a "fixed salary" that would satisfy the second requirement of [the FWW]. *Id.* (citations omitted).**

In other words, Liberty Mutual's policy of paying a premium rate for Saturday work not only violated the FWW's fixed salary requirement, but it also violated the FWW's "clear

mutual understanding" requirement for *all* employees, even if they had not in fact worked on a Saturday during the course of their employment with Liberty Mutual. *Id.*

The same reasoning applies here. Plaintiffs may exist who did not in fact work a holiday for HUB during the course of their employment. Although those Plaintiffs may have received a fixed salary, they did not have a "clear mutual understanding" that HUB *would pay* them a fixed salary regardless of hours worked (29 C.F.R. § 778.114), because HUB *would not have* paid them a fixed salary during weeks where they worked a holiday. Obviously, employees cannot have a clear understanding that they are going to be paid a fixed salary every week when that is not the actual policy of their employer. Thus, as in *Dooley*, there was no clear mutual understanding as a matter of law that Plaintiffs would receive a fixed amount of straight time pay each week; and therefore, "the fluctuating workweek method cannot be applied to *any* of [the] employees in this case." *Dooley*, 369 F.Supp.2d at 86

> 5.   **HUB's Minimum Billable Hour Requirements Violate the FWW's "Clear Mutual Understanding" Requirement, and Contravene the Fundamental Purpose of the FLSA's Overtime Provisions**

This Court addressed the "clear mutual understanding" requirement of the FWW in *Dingwall*, 3 F.Supp.2d 215, a case that is directly on point. In *Dingwall*, Judge Kahn held that the defendant failed to qualify for the FWW exception as a matter of law because it failed to satisfy the clear mutual understanding requirement of 29 C.F.R. § 778.114. *Id.* at 221. In reaching that conclusion, Judge Khan explained: "*the employee manuals distributed at various times during plaintiffs' employment all state[d] that '[s]taff personnel are normally expected to work a 40-hour week with the exception of pre-established holidays.' Thus, the fluctuating workweek method is inapplicable*." *Id.*

As this Court recognized in *Dingwall*, when an employer communicates to employees that they are "normally expected" or "required" to work a fixed number of hours per week (or even worse, a fixed *minimum* number of hours per week), the employees cannot reasonably be expected to have a "clear mutual understanding" that they are entitled to a "fixed salary even though [they] will be working alternating weeks of fewer or greater weekly hours than an agreed-upon average." *Adams v. City of Manchester*, 2012 WL 3242078, at *4 (E.D.Mo. Aug. 7 2012)(citations omitted).

In this case, to an even greater extent than the employer in *Dingwall*, HUB repeatedly and unequivocally communicated to Plaintiffs that their salary was based on their working a minimum number of hours per week. For example, HUB's offer letter and Employee Handbook, when read in conjunction with each other, indicated to Plaintiffs that they were required to work a minimum of 40 hours per week. Indeed, the Employee Handbook stated that HUB would provide "paid vacation" to "regular full-time salary employees who regularly work a ***minimum of 40 hours*** per week" (Exhibit **"E"**, § 26)(emphasis added), and HUB's standard offer letter indicated to Plaintiffs that they would receive vacation benefits. (Exhibit **"M"**). Therefore, as recipients of paid vacation, Plaintiffs logically expected they were required to "regularly work a ***minimum of 40 hours*** per week." (Exhibit **"E"**, § 26; *see also* Exhibit **"N"**). Likewise, the Employee Handbook stated that holiday pay would be provided to "full-time salary employees who regularly work a ***minimum of forty (40) hours*** per week." (Exhibit **"E"**, § 25). The attached payroll records show that salaried investigators were eligible for, and received, holiday pay. (Exhibit **"J"**). Therefore, similar to *Dingwall*, HUB's Employee Handbook clearly communicated to Plaintiffs that they were expected to "regularly work

a minimum of forty (40) hours per week," (Exhibit **"E"**, §§ 25, 26), which is entirely inconsistent with the FWW. *See* 29 C.F.R. § 778.114(c)("Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours"); *see also Hunter*, 453 F.Supp.2d at 61 (emphasis added) ("the undisputed evidence indicates that Price was *expected to work a minimum of forty hours every week* unless he utilized unearned leave, and that he typically was assigned a shift of 7:00 a.m. to 3:30 p.m. . . . the regularity of such work is hardly consistent with the situations that the FWW convention was designed to address").

In *Dingwall*, the type of language contained in HUB's Employee Handbook was enough, on its own, to disqualify the defendant from utilizing the FWW exception. *Dingwall*, 3 F.Supp.2d at 221. In this case, however, the facts are even more compelling, as the Employee Handbook is not the only reference to HUB's minimum hour requirement for salaried investigators. Salaried investigators were told through e-mails and telephone conversations with their supervisors that if they did not work (or bill)[9] a minimum number of hours per week, HUB could not remain profitable. (Exhibit **"Q"**). Plaintiffs discuss these verbal and written communications in the Affidavits attached as Exhibit **"N"**, and examples of such communications are attached as Exhibit **"Q"**. HUB repeatedly communicated to its salaried investigators in writing that HUB would demote them to part-time hourly positions if they did not satisfy HUB's minimum hour per week requirements:

- "You are expected to bill 40 hours a week to remain on a salary structure. If this cannot be accomplished for any

---

[9] Plaintiffs had to work hours far in excess of HUB's minimum billing requirements in order to satisfy those requirements, as admitted by HUB Operations Manager Shane Foster. *See* Exhibit **"Q"**, D003662 ("Remember you have to bill a minimum of 42 hours per week to justify your salary, and *there is a difference between 42 billable hours, and you just working 42 hours*).

reason, then we will have to come to an hourly agreement." (Exhibit **"Q"**, D003777 ).

- "Now, you must work at least 46-50 hours a week if you are salary." (Exhibit **"Q"**, D003716).

- "I know you have a lot going on; however, as a salaried employee, you must have 42 billable hours a week.  In previous weeks, you did not have 42 billable hours and you haven't had 42 billable hours consistently at all.  In order to support your salary, you must have those hours." (Exhibit **"Q"**, D003658).

- "Remember that as a salary employee, you are to be billing 40 hours per week."  (Exhibit **"Q"**, D003602).

- "[A]s a salaried employee, you must have 42 billable hours a week." (Exhibit **"Q"**, D003658).

- "42 billable hours is what I need to sustain your salary." (Exhibit **"Q"**, D003737).

- "If you fall short of 42 billable hours per week, then those are weeks that we must schedule you to work additional days on surveillance, to keep your numbers up to where they must be to justify paying your salary" (Exhibit **"Q"**, D003857).

- "You should always bill 40 plus hours a week." (Exhibit **"Q"**, D003841).

- You must be billing 42 hours a week to support your salary." (Exhibit **"Q"**, D003834).

These minimum billable hour requirements are a far more flagrant violation of 29 C.F.R. § 778.114 than the "expected 40-hour week" described in the *Dingwall* employee manuals. *Dingwall*, 3 F.Supp.2d at 221.  Indeed, Plaintiffs could not have had a "clear mutual understanding" that their salaries covered "whatever hours the job may demand in a particular workweek" (*Hunter, supra*) when they were told that HUB would relegate them to part-time status if they did not work a certain number of hours per week.  An employer cannot reasonably assert that it pays a salary that is intended to cover any number of hours, "whether many or few," (29 C.F.R. § 778.114[a]) if workweeks of less

24

than 40 hours result in threats of demotion to a part-time position.

Clearly, HUB intended to enjoy the benefits of the FWW exception (i.e., pay Plaintiffs only "half time" for overtime), but did not want the detriment of the FWW exception (i.e., pay the Plaintiffs their salary even if they worked less than 40 hours in a week). Thus, HUB demanded that Plaintiffs work a minimum of 40-50 hours per week or face demotion to part-time non-salaried positions. This abusive manipulation of the FWW exception should not be countenanced.

29 C.F.R. § 778.114 provides that salaries under the FWW are "in amounts agreed upon by the parties as adequate straight-time compensation for *long work weeks as well as short ones*." 29 C.F.R. § 778.114(c)(emphasis added). HUB flouted that basic concept of the FWW by requiring salaried investigators to work a minimum of 40-50 hours per week and lodging threats of demotion to part-time status when those requirements were not satisfied. (*See* Exhibit **"N"**; Exhibit **"Q"**). While HUB sought to eliminate the FWW's benefit for employees, it capitalized on the aspects of the FWW that benefit employers, by forcing Plaintiffs to work 60, 70, 80 and even 90-hour weeks, while paying them "half time" for overtime. (*See* Exhibit **"N"**).

On August 27, 2012, the U.S. District Court for the District of Connecticut held that an employer's job description stating that store managers were expected to work *"a minimum of 52 hours per week"* violated the FWW. *Hasan v. GPM Investments, LLC*, 2012 WL 3725693, at *4 (D.Conn. Aug. 27, 2012)(emphasis added). The court explained that 29 C.F.R. § 778.114(c) "warns that 'typically, such salaries are paid to employees who do not customarily work a regular schedule of hours' and are 'in amounts agreed on by the parties as adequate straight-time compensation for long work weeks as

well as short ones.'" *Id.* (*citing* 29 C.F.R. § 778.114(c)).   The court continued:

> **For a fluctuating work week arrangement to make sense to both parties, employees should offset their relative loss from a grueling work week far above forty hours with the benefit of full pay for weeks that clock-in at less than forty hours. Otherwise, employees have not bargained for anything but decreasing marginal pay as they work longer and longer hours at work.** *Id.*

The *Hasan* court noted that *Missel*, 316 U.S. 572 – the U.S. Supreme Court decision upon which 29 C.F.R. § 778.114 was founded – involved a rate clerk who sometimes worked long hours when shipments flooded in, and "sometimes not at all when business dried up." *Hasan*, 2012 WL 3725693, at *4 (*citing Missel v. Overnight Motor Transp. Co.*, 40 F.Supp.174, 176 [D.Md. 1941]).[10]   The court concluded that: "**variance between weeks with a moderate amount of overtime hours, and weeks where a majority of hours worked exceeded the 40 hour threshold, is not the same as the up and down fluctuation contemplated by the DOL and the Court in *Missel*.**"   *Id.* (emphasis added).

The same reasoning applies here.   The FWW makes no sense for employees unless they are able to "offset their relative loss from a grueling work week far above forty hours with the benefit of full pay for weeks that clock-in at less than forty hours." *Id.* That inherent balance in the FWW is eliminated when an employer seeks to impose a minimum billable hour mandate.[11]   Indeed, when an employer's entire business model is based upon salaried employees billing a *minimum* of 40-50 hours per week, its use of the

---

[10] As the *Hasan* court noted, the Supreme Court did not review the employee's pay records in the *Missel* decision, but the District Court did. *Missel*, 40 F.Supp. at 176 ("This data shows that during this period of thirty weeks, plaintiff worked on an average of sixty-five hours a week. But it also appears that plaintiff was hired to work for no specific number of hours per day or week; that his periods of work varied greatly from day to day; that he regulated his on-duty hours according to his own judgment as to what was necessary; that his work weeks ended on Thursday; that he was paid his weekly salary regardless of absent time; that for at least two work weeks during the period from October 24, 1938").

[11] Plaintiffs' *infrequent* 'violations' of HUB's "minimum hours" policy (when they worked less than 40 hours in a week), did not change the fact that the expressly stated policy itself contradicts the FWW.

FWW has reached a point where it can no longer coexist with the remedial purposes of the FLSA's overtime provisions.

The FLSA's overtime provisions were established to create a financial *disincentive* to the use of overtime. *Missel*, 316 U.S. at 578 ("[r]eduction of hours was a part of the plan from the beginning"); *see also Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). HUB's policies did the exact opposite. HUB abused and manipulated the FWW in such a way that it *incentivized* overtime hours; thereby transforming the FWW from a narrow exception that *complies* with the FLSA's overtime requirements into a method that *circumvents* the FLSA's overtime requirements.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request an Order granting their Motion for Partial Summary Judgment, holding that HUB failed to satisfy 29 C.F.R. § 778.114's prerequisites, and thus was not entitled to utilize the FWW exception.

Dated: September 26, 2012

Respectfully Submitted,

**SMITH, SOVIK, KENDRICK & SUGNET, P.C.**

By: _____
Steven Ward Williams, Esq.
Brady J. O'Malley, Esq.
*Attorneys for Plaintiffs*
250 South Clinton Street, Suite 600
Syracuse, NY 13202-1252
Tel.: (315) 474-2911

TO:   Felice B. Ekelman, Esq.
666 Third Avenue
New York, NY 10017
Attorneys for Defendant

27

# ADDENDUM A

Westlaw.

76 FR 18832-01, 2011 WL 1231289 (F.R.)                                                      Page 1

RULES and REGULATIONS

DEPARTMENT OF LABOR

Office of the Secretary

29 CFR Part 4

Wage and Hour Division

29 CFR Parts 516, 531, 553, 778, 779, 780, 785, 786, and 790

RIN 1215-AB13, 1235-AA00

Updating Regulations Issued Under the Fair Labor Standards Act

Tuesday, April 5, 2011

AGENCY: Wage and Hour Division, Department of Labor.

**\*18832** ACTION: Final rule.

SUMMARY: In this final rule, the Department of Labor (Department or DOL) revises regulations issued pursuant to the Fair Labor Standards Act of 1938 (FLSA) and the Portal-to-Portal Act of 1947 (Portal Act) that have become out of date because of subsequent legislation. These revisions conform the regulations to FLSA amendments passed in 1974, 1977, 1996, 1997, 1998, 1999, 2000, and 2007, and Portal Act amendments passed in 1996.

DATES: Effective Date: These rules are effective on May 5, 2011.

FOR FURTHER INFORMATION CONTACT: Montaniel Navarro, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, NW., Washington, DC 20210; telephone: (202) 693-0067 (this is not a toll-free number). Copies of this final rule may be obtained in alternative formats (Large Print, Braille, Audio Tape or Disc), upon request, by calling (202) 693-0023 (not a toll-free number). TTY/TDD callers may dial toll-free (877) 889-5627 to obtain information or request materials in alternative formats.

Questions of interpretation and/or enforcement of regulations issued by this agency may be directed to the nearest Wage and Hour Division (WHD) District Office. Locate the nearest office by calling our toll-free help line at (866) 4USWAGE ((866) 487-9243) between 8 a.m. and 5 p.m. in your local time zone, or log onto the WHD's Web site for a nationwide listing of Wage and Hour District and Area Offices at: http://www.dol.gov/esa/contacts/whd/america2.htm.

SUPPLEMENTARY INFORMATION: The Regulatory Information Number (RIN) identified for this rulemaking changed with the publication of the 2010 Spring Regulatory Agenda due to an organizational restructuring. The old RIN was assigned to the Employment Standards Administration, which no longer exists. A new RIN has been assigned to the WHD.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

76 FR 18832-01, 2011 WL 1231289 (F.R.)                                    Page 31

Mortensen, which requires that the employer grant compensatory time within a reasonable period of the date requested, essentially nullifies the "unduly disrupt" provision of 7(o)(5). See Beck v. City of Cleveland, 390 F.3d 912, 925 (6th Cir. 2005) ("to grant the city the unlimited discretion to deny compensatory leave requests relieves the city of establishing the undue disruption requirement imposed by Congress"); DeBraska v. City of Milwaukee, 131 F. Supp. 2d 1032, 1037 (E.D. Wis. 2000). Accordingly, in light of the recent appellate decision, and in consideration of the extensive comments received on this section, the Department has decided not to finalize the proposed revision to section 553.25(c) and (d) and to leave the current regulation unchanged consistent with its longstanding position that employees are entitled to use compensatory time on the date requested absent undue disruption to the agency. In response to comments concerning whether the payment of overtime is a consideration in determining whether the use of compensatory time off is unduly disruptive, the Department does not believe that any regulatory change is warranted. The Department maintains its longstanding position that the fact that overtime may be required of one employee to permit another employee to use compensatory time off is not a sufficient reason for the employer to claim that the compensatory time off request is unduly disruptive. See Wage and Hour Opinion Letter 1994 WL 1004861 (Aug. 19, 1994); 52 FR 2012, 2017 (Jan. 16, 1987) ("The Department recognizes that situations may arise in which overtime may be required of one employee to permit another employee to use compensatory time off. However, such a situation, in and of itself, would not be sufficient for an employer to claim that it is unduly disruptive.").

11. Fluctuating Workweek Method of Computing Overtime Under 29 CFR 778.114

The NPRM proposed to modify the Department's regulation at 29 CFR 778.114 addressing the fluctuating workweek method of computing overtime compensation for salaried nonexempt employees to permit the payment of non-overtime bonuses and incentives without invalidating the guaranteed salary criterion required for the half-time overtime pay computation. The current regulation provides that an employer may use the fluctuating workweek method for computing half-time overtime compensation if an employee works fluctuating hours from week to week and receives, pursuant to an understanding with the employer, a fixed salary as straight-time compensation "(apart from overtime premiums)" for whatever hours the employee is called upon to work in a workweek, whether few or many. In such cases, an employer satisfies the overtime pay requirement of section 7(a) of the FLSA if it compensates the employee, in addition to the salary amount, at least one-half of the regular rate of pay for the hours worked in excess of 40 hours in each workweek. *18849 Because the employee's hours of work fluctuate from week to week, the regular rate must be determined separately each week based on the number of hours actually worked each week.

Paying employees bonus or premium payments for certain activities such as working undesirable hours is a common and beneficial practice for employees. The NPRM proposed that bona fide bonus or premium payments would not invalidate the fluctuating workweek method of compensation, but that such payments (as well as "overtime premiums") must be included in the calculation of the regular rate unless they are excluded by FLSA sections 7(e)(1)-(8). The proposal also added an example to § 778.114(b) to illustrate these principles where an employer pays an employee a nightshift differential in addition to a fixed salary.

The Department's view, at that time, was that the proposed modification clarified the rule and was consistent with the Supreme Court's decision in Overnight Transportation Co. v. Missel, 316 U.S. 572 (1942), on which the existing regulation is patterned. See 73 FR 43662 (Jul. 28, 2008). The Department's proposed modification was intended to allow employers to pay additional bona fide premium payments.

The NPRM also proposed to increase the numerical values in the examples of overtime computations in §

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

778.114(b) so the rates of pay would be no less than the current minimum wage. Frank Dean commented that the term "approximately" in two places carried over from the current regulatory language is potentially misleading and confusing and should be eliminated to make it clear that the calculation of statutorily mandated overtime is exacting. Mr. Dean recommended changing one of the weekly hour totals from 44 to 37.5 so that there would be an exact regular rate calculation in each instance, thereby eliminating the need to use "approximately." We agree with this analysis and have incorporated his suggested revision into the final rule.

Wage and Hour Consulting Services commented that the statement limiting the weekly hours worked in the example to "never in excess of 50 hours in a workweek" in proposed § 778.114(b)(1) was confusing and redundant and should be deleted as unnecessary because it is clearly explained elsewhere in the section that the wage rate of an employee paid under the fluctuating workweek method would less desirable hours. This phrase was carried over from the current regulation and we believe that it does not cause confusion and is needed to establish in the example the concept that the employee's regular rate will not fall below the minimum wage. We have, therefore, retained the concept but have made minor wording changes to clarify the example.

Beyond these two minor editorial comments, the comments were sharply divided on the substance of the proposed revisions to the fluctuating workweek provisions. In general, commenters representing employers favored the revisions while commenters representing employees strongly opposed the revisions.

SHRM noted that it is common practice to pay a nonexempt salaried employee a bonus or premium as an incentive for various reasons, such as working less desirable hours. SHRM commented that other payment methods, such as hourly, piece rates, day rates, and job rates, contemplate that an employee may receive a bonus or other premium payments in addition to normal pay and asserted that it was logical and consistent to permit such payments under the fluctuating workweek method of compensation.

The Chamber of Commerce also favored the revisions but sought further clarifications as to when and how bonuses should be included in regular rate calculations, particularly when bonuses (1) cover more than one workweek, (2) are not paid in the same workweek when the work was performed to which the bonus applies, and (3) are not allocable among workweeks in proportion to the amount of bonus actually earned each week. Littler Mendelson, P.C., also supported the proposed revisions, but suggested further revisions to add cross-references to other sections in part 778 regarding how to include bonuses in the regular rate to clarify that all the rules regarding bonuses for nonexempt employees apply equally whether the nonexempt employee is paid by the hour, on a salary basis or under the fluctuating workweek method. Because we believe the principles for including bonuses in the regular rate discussed in other sections of the regulations are clear, we do not find that further clarifications or additional cross-references are necessary in this section.

Fisher & Phillips LLP noted that part 778 is an interpretative rule and similarly noted that § 778.114 "is simply one in a series of examples of how the regular-rate principles of Section 778.109 apply in different situations." The commenter recommended revisions to clarify that the half time overtime calculation in section 778.114 applies regardless of whether the employee's hours fluctuate. The Department disagrees with this comment and notes that the application of section 778.114 is properly limited to situations where the employee's hours fluctuate. See Flood v. New Hanover County, 125 F.3d 249, 253 (4th Cir. 1997); FOH section 32b04b.

Comments expressing strong opposition to the proposed revisions were mostly based on two primary criticisms. First, that receipt of premium and bonus payments is inconsistent with payment of a fixed salary. See NELP, SEIU, NELA, AFL-CIO, Members of United States Congress, and North Carolina Justice Center. Second, that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

the proposed revisions will encourage employers to schedule additional overtime for employees paid under the fluctuating workweek method or otherwise disadvantage workers by expanding its use to a larger portion of the workforce. See NELP, North Carolina Justice Center, NELA, AFL-CIO, and Members of United States Congress. A number of these comments opposing the revisions questioned the Department's authority for making the revisions and asserted they would administratively overturn uniform, well-settled case law without justification and urged the Department to withdraw them. Commenters stating that premium and bonus payments are inconsistent with the concept of a fixed salary generally asserted that the proposed revisions are inconsistent with the Supreme Court's decision in Missell, in which the Court approved the use of the fluctuating workweek method requiring payment of only the additional half-time premium for hours worked over 40 per week for an employee paid a fixed weekly wage who worked weekly hours that fluctuated. Based on the Court's ruling and the language of current § 778.114(a), which provides that "[a]n employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many," these commenters asserted that employees paid under the fluctuating workweek method must receive fixed weekly pay that does not vary. The proposal departs from this fundamental concept, the commenters asserted. These commenters also took issue with the statement in the NPRM that the current regulation has presented challenges in the courts, asserting that courts applying the fluctuating workweek method of payment have uniformly concluded that *18850 paying additional "non-overtime" premiums violates section 779.114. See NELA (citing O'Brien v. Town of Agawam, 350 F.3d 279 (1st Cir. 2003); Dooley v. Liberty Mutual Ins. Co., 369 F. Supp. 2d 81 (D. Mass. 2005); Ayers v. SGS Control Services, Inc., 2007 WL 646326 (S.D.N.Y. 2007)), SEIU, AFL-CIO, NELP, Members of United States Congress, and North Carolina Justice Center.

Several commenters also noted that the proposal would permit employers to reduce employees' fixed weekly salaries and shift the bulk of the employees' wages to bonus and premium pay. See NELP, NELA, SEIU, and North Carolina Justice Center. These commenters argued that this would harm employees because it would lead to significant variations in weekly wages based on the hours worked. They stated that such variations in pay are inconsistent with the purpose of the fluctuating workweek. They further objected to the proposal because it would expand the use of the fluctuating workweek method to industries in which bonus and premium payments are common. See NELA, Members of United States Congress, SEIU, and North Carolina Justice Center. Comments submitted by Members of the United States Congress urged that instead of modifying this section to expand its use, the Department should consider narrowing the scope of the section to prevent employers from abusing this method to lower workers' pay.

The Department has carefully considered all of the comments submitted on this section. While the Department continues to believe that the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the fluctuating workweek method of computing overtime under section 778.114. As several commenters noted, the proposed regulation could have had the unintended effect of permitting employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments, potentially resulting in wide disparities in employees' weekly pay depending on the particular hours worked. It is just this type of wide disparity in weekly pay that the fluctuating workweek method was intended to avoid by requiring the payment of a fixed amount as straight time pay for all hours in the workweek, whether few or many. The basis for allowing the half-time overtime premium computation under the fluctuating workweek method is the mutual understanding between the employer and the employee regarding payment of a fixed amount as straight

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

time pay for whatever hours are worked each workweek, regardless of their number. While the example provided in the NPRM of nightshift premiums resulted in a relatively modest change in the employee's straight time pay, the Department now believes that the proposed regulation would have been inconsistent with the requirement of a fixed salary payment set forth by the Supreme Court in Overnight Motor Transport v. Missel. Moreover, on closer examination, the Department is persuaded that the courts have not been unduly challenged in applying the current regulation to additional bonus and premium payments. See O'Brien v. Town of Agawam, 350 F.3d 279 (1st Cir. 2003); Adeva v. Intertek USA, 2010 WL 97991 (D.N.J. 2010); Dooley v. Liberty Mutual Ins. Co., 369 F. Supp. 2d 81 (D. Mass. 2005); Ayers v. SGS Control Services, Inc., 2007 WL 646326 (S.D.N.Y. 2007).

Finally, while the proper use of the fluctuating workweek method of pay results in an employee being paid time and one-half of the employee's regular rate for overtime hours, the Department is cognizant that this method of pay results in a regular rate that diminishes as the workweek increases, which may create an incentive to require employees to work long hours. The Department does not believe that it would be appropriate to expand the use of this method of computing overtime pay beyond the scope of the current regulation. Accordingly, the final rule has been modified from the proposal to restore the current rule requiring payment of the fixed salary amount as the straight time pay for whatever hours are worked in the workweek, that a clear mutual understanding of the parties must exist that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek whatever their number, that the fixed salary amount must be sufficient to provide compensation at a rate not less than the minimum wage, and that the employee must receive extra compensation in addition to the fixed salary for all overtime hours worked at a rate not less than one-half the regular rate of pay. Editorial revisions have been included in the text of the final rule to delete gender-specific references and to update the computation examples to provide wage rates above the minimum wage and the exact calculation of the regular rate. The proposed examples in the NPRM at § 778.114(b)(2) suggesting methods for making supplemental nightshift premium payments as part of the fluctuating workweek methodology for computing half-time overtime pay have been deleted from the final rule.

*Other Revisions*

The current recordkeeping regulations on tipped employees at 29 CFR 516.28 include an outdated parenthetical reference that suggests a limit "(not in excess of 40 percent of the applicable statutory minimum wage)" as the maximum amount of tip credit an employer may claim under the FLSA. 29 CFR 516.28(a)(3). This outdated reference reflected the former provisions of section 3(m) of the FLSA as amended by the 1977 FLSA Amendments, which has since been overtaken by subsequent statutory amendments passed in 1989 and 1996. See Public Law 95-151, § 3(b)(2), 91 Stat. 1249 (Nov. 1, 1977); Public Law 101-157, § 5, 103 Stat. 941 (Nov. 17, 1989); Public Law 104-188, § 2105(b), 110 Stat. 1929 (Aug. 20, 1996). The Department inadvertently overlooked updating this reference in part 516 when updating the other tip credit references in the NPRM. Because the regulatory reference has been superseded by subsequent statutory enactments, the Department is updating this section of the recordkeeping regulation in this final rule to conform it to current law and, because of the technical nature of the change, is doing so without prior notice and opportunity for public comment. The Department hereby finds, pursuant to the Administrative Procedure Act, that prior notice and opportunity for public comment on this ministerial change that is required by statutory amendment are impracticable, unnecessary, or contrary to the public interest. See 5 U.S.C. 553(b)(3)(B).

The current interpretive regulation on "Hours Worked," at 29 CFR 785.7 ("Judicial construction"), cites incorrectly to a holding of the U.S. Supreme Court in Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

agency—(A) who has accrued compensatory time off authorized to be provided under paragraph (1), and (B) who has requested the use of such compensatory time, shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

29 U.S.C. 207(o)(5). As discussed supra, the Department proposed to amend § 553.25(c) to comport with appellate court decisions reading the statutory language to state that once an employee requests compensatory time off, the employer has a reasonable period of time to allow the employee to use the time unless doing so would be unduly disruptive. Additionally, the Department proposed to clarify the employer's obligation when denying an employee's request for the use of compensatory time off in § 553.25(d).

In the NPRM, the Department stated its belief that the proposed changes would eliminate some of the confusion over the use of compensatory time off. The Department stated that it did not believe the proposed changes altered the nature of compensatory time off rights and responsibilities, but recognized that because of uncertainty as to their ability to use compensatory time when requested, some employees might choose not to accrue compensatory time off, thus resulting in some slight economic impacts.

As already discussed in this preamble, since the publication of the NPRM, another appellate court has addressed this issue and concluded that the statutory language is unclear and the Department's regulations requiring an employer to grant the specific time requested unless it would unduly disrupt the agency's operations is reasonable. The Department has therefore reexamined its proposal based on all the appellate decisions and the public comments and has decided not to finalize the proposed revision to section 553.25(c) and (d) and to leave the current regulation unchanged consistent with its longstanding position that employees are entitled to use compensatory time on the date requested absent undue disruption to the agency. Because the proposed changes will not be implemented, the Department does not believe that there will be any measurable economic impact on the public.

*Fluctuating Workweek Method of Computing Overtime Under 29 CFR 778.114*

The Department proposed to modify the regulation at 29 CFR 778.114 addressing the fluctuating workweek method of computing overtime compensation for salaried nonexempt employees. The proposed regulation provided that bona fide bonus or premium payments would not invalidate the fluctuating workweek method of compensation, but that such payments (as well as "overtime premiums") must be included in the calculation of the regular rate unless they are excluded by FLSA sections 7(e)(1)-(8). Paying employees bonus or premium payments for certain activities such as working undesirable hours is a common and beneficial practice for both employers and their employees.

For the reasons discussed earlier in this preamble, while the Department continues to believe that the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the fluctuating workweek method of computing overtime under section 778.114. Therefore the final rule does not implement this proposed provision. Because the proposed changes will not be implemented, the Department does not believe that there will be any measurable economic impact on the public.

1. Executive Orders 12866 and 13563 (Regulatory Review)

The Department does not believe that incorporating these statutory amendments into the FLSA and Portal Act regulations will impose measurable costs on private or public sector entities. The final rule changes should not

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.