## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY FUNKE and MARSHALL WALKER, individually and on behalf of all other similarly situated,<br><br>                        Plaintiffs,<br><br>vs.<br><br>HUB ENTERPRISES, INC.,<br><br>                        Defendant. | Civil Action No.: 11-CV-1274 (MAD) (DEP)<br><br>**SETTLEMENT AGREEMENT AND RELEASE** |

This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined) and Defendant HUB Enterprises, Inc. ("Defendant" or "HUB") (together, "the Parties").

### RECITALS

WHEREAS, Plaintiffs Kimberly Funke and Marshall Walker filed an FLSA Collective Action and Rule 23 Class Action Complaint on October 26, 2011 ("Complaint") and an Amended Complaint on June 8, 2012;

WHEREAS, the Complaint and Amended Complaint asserted class action claims under the New York Labor Law and collective action claims under the Fair Labor Standards Act and sought recovery of, among other things, allegedly unpaid wages, unpaid overtime wages, liquidated damages, and attorneys' fees and costs;

WHEREAS, Defendant denied and continues to deny all of the allegations made by Plaintiffs in the Litigation and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, the Parties have engaged in substantial discovery, including but not limited to taking and defending depositions, propounding and responding to document requests and interrogatories, reviewing thousands of documents exchanged by the Parties, and analyzing time and payroll records;

WHEREAS, the Parties participated in a full-day settlement conference before Magistrate Judge Peebles on November 20, 2012; even though a settlement was not reached at the

settlement conference, the Parties continued to negotiate and exchanged a number of proposals and counter-proposals;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Plaintiffs and Opt-In Plaintiffs, and that would not occur for several years, Opt-In Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Opt-In Plaintiffs; and

WHEREAS, this Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.    **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1    **Agreement.** "Agreement" shall mean this Settlement Agreement and Release.

1.2    **Claims Administrator.** "Claims Administrator" shall mean the entity jointly selected by the Parties to provide notice to the Opt-In Plaintiffs and administer payment of the settlement to Opt-In Plaintiffs.

1.3    **Claim Form.** "Claim Form" shall mean the optional form provided to certain Opt-In Plaintiffs to submit in order to obtain their settlement check(s) pursuant to this Agreement. The Claim Form shall be in the form attached as Exhibit "B" to this Agreement, or in such other form as approved by the Court.

1.4    **Claim Form Period.** "Claim Form Period" shall mean the period of time in between the Claims Administrator's mailing of the Claim Form and the Claim Form deadline, as described in Section 2.4(D) of this Agreement.

1.5    **Court.** "Court" shall mean the United States District Court for the Northern District of New York, the Honorable Magistrate Judge Peebles presiding.

1.6    **Covered Period.** "Covered Period" shall mean the period from October 26, 2008 through the date of Court approval of the Agreement. However, for those individuals employed by HUB as Investigators in New York, the "Covered Period" shall mean the period from October 26, 2005 through the date of Court approval of the Agreement.

1.7    **Defendant.** "Defendant" shall mean HUB Enterprises, Inc.

1.8 **Defendant's Counsel.** "Defendant's Counsel" shall mean Jackson Lewis LLP. For the purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Felice B. Ekelman, Esq. and Jason A. Zoldessy, Esq. of Jackson Lewis LLP.

1.9 **Effective; Effective Date.** The "Effective Date" is the date on which this Agreement becomes effective, which shall be the date on which the Court issues an Order granting approval of the Agreement.

1.10 **Escrow Account.** "Escrow Account" shall mean the interest-bearing account(s) created and controlled by the Claims Administrator.

1.11 **FLSA Opt-In Plaintiffs.** "FLSA Opt-In Plaintiffs" shall consist of all individuals who filed Consent to Become A Party Plaintiff Forms with the Court on or before April 19, 2012, as well as all individuals who return Consent to Join Forms in the form attached hereto as Exhibit "D" to the Claims Administrator within sixty (60) days after the Claims Administrator mails the form attached hereto as Exhibit "C" to such individuals notifying them of the Agreement and their right to participate in the settlement.

1.12 **Litigation.** "Litigation" shall mean *Funke et al., v HUB Enterprises, Inc.*, 5:11-cv-01274 pending in the United States District Court for the Northern District of New York.

1.13 **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Settlement Payment after deductions for Court-approved attorneys' fees and costs as described in Section 3.1(C), Court-approved service awards to Plaintiffs as described in Section 3.2, Claims Administrator costs as described in Section 2.1, HUB's share of payroll taxes as described in Section 3.4(D) and any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1(A).

1.14 **Opt-In Plaintiffs.** "Opt-In Plaintiffs" shall mean all FLSA Opt-In Plaintiffs, as defined above. At times, Opt-In Plaintiffs are collectively referred to herein as "the Opt-Ins."

1.15 **Opt-In Plaintiffs' Counsel.** "Opt-In Plaintiffs' Counsel" shall mean Smith, Sovik, Kendrick & Sugnet, P.C.

1.16 **Parties.** "Parties" shall mean Plaintiffs and Defendant.

1.17 **Plaintiffs.** "Plaintiffs" shall refer to Kimberly Funke and Marshall Walker and shall also include any and all of their representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.18 **Releasees.** "Releasees" shall mean Defendant, as defined herein, its affiliates, subsidiaries, successors and all other related entities, including but not limited to all of its incumbent and former officers, directors, owners, investors, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

1.19 **Settlement Payment.** "Settlement Payment" shall mean the $750,000.00 payment, plus any interest accrued as provided in Section 3.1(B).

3

1.20    **Stipulation.** "Stipulation" shall mean the Stipulation and Order of Final Dismissal with Prejudice attached hereto as Exhibit "A."

2.    **APPROVAL AND NOTICE TO OPT-IN PLAINTIFFS**

2.1    **Retention of Claims Administrator.** Within 10 business days after the execution of this Agreement (including the Stipulation appended as Exhibit "A"), the Parties shall retain a Claims Administrator to administer the settlement process. The Claims Administrator shall be responsible for mailing notifications to the Opt-Ins, calculating Opt-In Plaintiffs' share of the Net Settlement Fund, and preparing and mailing checks to Opt-In Plaintiffs as provided herein. The Parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the settlement. The Claims Administrator's fees shall be paid from the Settlement Payment.

2.2    **Approval by the Court.** Within 2 business days after the execution of this Agreement (including the Stipulation appended as Exhibit "A"), the Parties shall execute and file with the Court "AO 85: Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge," consenting to the jurisdiction of Magistrate Judge Peebles. Within 5 business days after the execution of this Agreement, the Parties will jointly submit the Agreement (including the appended Exhibits) to the Court for review and approval.

2.3    **Denial of Court Approval.** If the Court denies approval of the Agreement, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement addressing the issues raised by the Court. Should reconsideration and/or the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted, and Defendant retains the right to contest whether this case should be maintained as a class action or collective action, and to contest the merits of the claims being asserted by Plaintiffs in this Litigation. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

2.4    **Notice to Prospective Opt-In Plaintiffs.**

A.    Within 10 days following the date on which the Court grants approval of the Agreement, Defendant will provide the Claims Administrator with a list, in electronic form, of the (1) names, (2) last known addresses, (3) social security numbers and (4) dates of employment of all opt in-plaintiffs who previously (i.e. on or before April 19, 2012) filed Consent to Become A Party Plaintiff Forms with the Court. Defendant will also provide the Claims Administrator with the time periods these individuals were paid pursuant to the fluctuating workweek method of overtime ("FWW").

B.    Within 10 days following the date on which the Court grants approval of the Agreement, Defendant also will provide the Claims Administrator with a list, in electronic form, of the (1) names, (2) last known addresses, (3) social security numbers, (4) dates of employment and (5) time periods paid pursuant to the FWW

4

of all individuals who were employed by HUB as Investigators and paid pursuant to the FWW at any time between October 26, 2008 and the date of Court approval of the Agreement, provided such individuals did not previously join the lawsuit and thus are not encompassed by the list described in Section 2.4(A) above. However, this list also shall include those individuals employed by HUB as Investigators in New York and paid pursuant to the FWW from October 26, 2005 to the date of Court approval of the Agreement, provided such individuals did not previously join the lawsuit and thus are not encompassed by the list described in Section 2.4(A) above. Opt-In Plaintiffs' Counsel shall be provided with the above lists without the social security numbers.

C.   Within 30 days of the date on which the Court grants approval of the Agreement, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Claim Form attached hereto as Exhibit "B" to the Opt-In Plaintiffs described in Section 2.4(A) above. Within 30 days of the date on which the Court grants approval of the Agreement, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Court-Authorized Notice of Settlement in the form appended hereto as Exhibit "C" to all individuals described in Section 2.4(B) above, along with the Consent to Join Form attached hereto as Exhibit "D," using each individual's last known address as recorded in Defendant's records. (Exhibits "B," "C," and "D" are collectively referred to in this Section as the "Notices.") The Claims Administrator shall take all reasonable steps to obtain the correct address of any individual for whom the notice is returned by the post office as undeliverable, including using social security numbers to obtain better address information, and shall attempt re-mailings as described below. Defendant's Counsel and Opt-In Plaintiffs' Counsel have the right to make inquiries and receive any information from the Claims Administrator related to the claims administration process, except that Opt-In Plaintiffs' Counsel shall not be provided with the individuals' social security numbers.

D.   If any Notices are returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt one re-mailing per Opt-In Plaintiff. The Claims Administrator shall, within 10 calendar days after the first mailing of the Notices, notify Opt-In Plaintiffs' Counsel and Defendant's Counsel of the precise dates of the Claim Form Period, which shall end sixty (60) days after the first mailing of the Notices (the "Claim Form Deadline"). Re-mailings will not extend the deadline to return Claim Forms or Consent to Join Forms, which must be returned within sixty (60) days of the first mailing.

E.   The Claims Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings including the number of Notices which were re-mailed, the number of successful and unsuccessful mailings, and the number of individuals who have sent back Consent to Join forms to participate in the settlement. The Claims Administrator shall provide copies of all Consent to Join Forms to both Opt-In Plaintiffs' Counsel and Defendant's Counsel, which Opt-In Plaintiffs' Counsel shall promptly file with the Court.

3.    **SETTLEMENT TERMS**

3.1   **Settlement Payment.**

A.    Defendant agrees to pay $750,000.00, which shall resolve and satisfy: (a) Court-approved attorneys' fees and costs; (b) all amounts to be paid to Opt-In Plaintiffs; (c) Court-approved service payments to Plaintiffs; (d) the Claims Administrator's fees; (e) HUB's share of payroll taxes as described in Section 3.4(D); and (f) any fees associated with investing and liquidating the Settlement Payment. Defendant will not be required to pay more than $750,000.00.

B.    By no later than 15 days after the Court grants approval of the Agreement, Defendant shall remit a check to the Claims Administrator for $750,000.00 to be deposited into the Escrow Account. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Payment.

C.    Within 20 days of the Effective Date, the Claims Administrator will distribute to Opt-In Plaintiffs' Counsel their attorneys' fees of Two Hundred Fifty Thousand Dollars and Zero Cents ($250,000.00) as well as litigation costs and expenses in the amount of Thirty-Six Thousand Three Hundred Eighty-Four Dollars and Twenty-One Cents ($36,384.21).

D.    Within 30 days after the Claim Form Deadline, the Claims Administrator will distribute the remainder of the Settlement Payment. The Settlement Payment shall be distributed as follows:

   (1)    Claims Administrator's fee.

   (2)    Court-approved service payments as described in Section 3.2.

   (3)    Opt-In Plaintiffs' Settlement Payments as described in Section 3.3.

3.2   **Service Payments to Plaintiffs.** Pursuant to this Agreement, Plaintiffs Kimberly Funke and Marshall Walker hereby apply to the Court to receive $5,000.00 each from the Settlement Payment for services rendered to the Opt-Ins. The service awards and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Fund. The substance of the above-referenced Plaintiffs' application for service payments is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service awards shall not terminate this Agreement. Any monies not approved by the Court become part of the Net Settlement Fund.

3.3   **Distribution to Opt-In Plaintiffs**

A.    Opt-In Plaintiffs will be deemed eligible for a payment hereunder.

6

B.   Minimum Payment to Opt-In Plaintiffs. Notwithstanding the formulas below, no Opt-In Plaintiff will be awarded a payment that is less than $100.00. In the event that an Opt-In Plaintiff's settlement share under the calculation set forth in Section 3.3(C) is less than $100.00 (before taxes are deducted), his or her settlement share will be increased to $100.00 and subtracted from the Net Settlement Fund, and all other Opt-In Plaintiffs' settlement shares will be recalculated to offset this increase.

C.   An Opt-In Plaintiff's proportionate share of the Net Settlement Fund shall be determined by the Claims Administrator pursuant to the formula set forth below:

   (1)   Compute the total number of workweeks all Opt-In Plaintiffs were employed by HUB as Investigators and paid pursuant to the FWW between (a) October 26, 2008 and the date of Court approval of the Agreement for those Opt-In Plaintiffs not residing during his or her period of such FWW employment in New York and (b) October 26, 2005 and the date of Court approval of the Agreement for each Opt-In Plaintiff residing during his or her period of such FWW employment in New York.

   (2)   Divide the number of workweeks each Opt-In Plaintiff was employed by HUB as an Investigator and paid pursuant to the FWW between (a) October 26, 2008 and the date of Court approval of the Agreement for those Opt-In Plaintiffs not residing during his or her period of such FWW employment in New York and (b) October 26, 2005 and the date of Court approval of the Agreement for each Opt-In Plaintiff residing during his or her period of such FWW employment in New York, by the sum in Section 3.3(C)(1).

   (3)   Multiply the quotient in Section 3.3(C)(2) by the amount of the Net Settlement Fund to determine each Opt-In Plaintiff's proportionate share of the Net Settlement Fund.

D.   Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.4.

E.   The Claims Administrator shall mail to all Opt-In Plaintiffs their proportionate share of the Net Settlement Fund.

F.   Opt-In Plaintiffs will have ninety (90) calendar days from the date of the mailing of the settlement checks to redeem their settlement payments. If Opt-In Plaintiffs do not redeem their settlement payment checks within the 90 day period, their settlement checks will be void. If an Opt-In Plaintiff alerts Opt-In Plaintiffs' Counsel, Defendant's Counsel, or the Claims Administrator during the 90-day period to redeem settlement payments that he or she has not received his or her settlement check, the Claims Administrator will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the

Opt-In Plaintiff's original settlement check and reissue that Opt-In Plaintiff's settlement check. All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter.

G.   Any unclaimed funds remaining from the distribution shall be returned to HUB. The Claims Administrator shall, within 14 days after the latest deadline for checks to be redeemed (which shall be at most 135 days after the initial mailing of the settlement checks), issue a check for the Unclaimed Funds to HUB and send such payment to Defendant's Counsel.

H.   All payments to Opt-In Plaintiffs made pursuant to this Agreement shall be deemed to be paid to such Opt-In Plaintiffs solely in the year in which such payments actually are received by the Opt-In Plaintiffs. It is expressly understood and agreed that the receipt of such Settlement Payments will not entitle any Opt-In Plaintiff to additional compensation or benefits under any of Defendant's bonus, contest or other compensation or benefit plans or agreements in place during the Covered Period, nor will it entitle any Opt-In Plaintiff to any increased retirement, 403b plan, 401K benefits or matching benefits or deferred compensation benefits. It is the intent of this settlement that the Settlement Payments provided for in the Agreement are the sole payments to be made by Defendant to the Opt-In Plaintiffs, and that the Opt-In Plaintiffs are not entitled to any new or additional compensation or benefits as a result of having received the Settlement Payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Covered Period).

3.4   **Taxability of Settlement Payments.**

A.   For tax purposes, 50% of payments to Opt-In Plaintiffs pursuant to Section 3.3 shall be treated as back wages and 50% of such payments shall be treated as liquidated damages and prejudgment interest.

B.   Minimum Payments issued to Opt-In Plaintiffs shall be treated as liquidated damages and prejudgment interest.

C.   Payments treated as back wages pursuant to Section 3.4(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest pursuant to Sections 3.4(A) and (B) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.1(C) shall be made without withholding. Opt-In Plaintiffs' Counsel will receive a Form 1099 for this payment, and each Opt-In Plaintiff shall receive a 1099 for his or her pro-rata share of Opt-In Plaintiffs' Counsel's attorneys' fees. Any Service

8

Payments made pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

D.  Any and all applicable employer payroll tax contributions associated with W-2 wage payments, including but not limited to Defendant's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.4(A), shall be paid out of the Settlement Payment.  The employee portion of all applicable payroll taxes shall not be Defendant's responsibility.  Any tax responsibility for the non-wage portion of the payments to Opt-In Plaintiffs shall not be Defendant's responsibility.

E.  Plaintiffs, on behalf of the Opt-Ins and each individual member of the Opt-Ins, acknowledge and agree that each individual Opt-In Plaintiff will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.4(C)). Plaintiffs, on behalf of the Opt-Ins and each individual member of the Opt-Ins, acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

## 4.   RELEASE

4.1   **Release of Claims.**  Upon the Effective Date, each Opt-In Plaintiff, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendant, Defendant's present and former parent companies, subsidiaries, related or affiliated companies, and their respective officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, the "Releasees"), from any and all claims for any wage and hour violations under the Fair Labor Standards Act and any state and/or local law (including but not limited to the New York Labor Law), including but not limited to, any and all claims for unpaid wages, overtime pay and all other claims that were or, could have been asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including but not limited to the New York Labor Law and New York Code of Rules and Regulations), through the Effective Date of this Agreement. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs.

Opt-In Plaintiffs shall be issued settlement checks with the following language:

By endorsing this check, I acknowledge that I have consented to join the FLSA collective action against Defendant styled *Funke et al. v. HUB Enterprises, Inc., 5:11-cv-01274* and release Defendant and other Releasees from all wage and hour claims under the Fair Labor Standards Act which have been brought or which could have been

brought in the Litigation and any wage and hours claims under any state law (including but not limited to the New York Labor Law), including but not limited to minimum wage and overtime wage claims for all time periods through and including the date of my signature herein, and expressly release Defendant and other Releasees from any such claims.

The Claims Administrator will provide Defendant's Counsel with a photocopy of each endorsed check, which Defendant's Counsel may then file with the Court.

4.2     **Release of Fees and Costs for Settled Matters.**  Opt-In Plaintiffs' Counsel and Plaintiffs, on behalf of the Opt-Ins and each individual Opt-In Plaintiff, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Opt-In Plaintiffs' Counsel's representation of Plaintiffs and the Opt-Ins.

4.3     **No Assignment.**  Opt-In Plaintiffs' Counsel and Plaintiffs, on behalf of the Opt-Ins and each individual Opt-In Plaintiff, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any interest or claim in this Litigation, or any portion thereof.  Opt-In Plaintiffs who currently are in bankruptcy and/or whose claims properly belong, in whole or in part, to their bankruptcy estate, shall take the steps necessary to ensure that the trustee in bankruptcy waives any claim on their behalf in exchange for the payment made hereunder.

4.4     **Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Opt-Ins, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Opt-Ins.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

5.      **INTERPRETATION AND ENFORCEMENT**

5.1     **Cooperation Among the Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party,

agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2   **No Publicity.**  Plaintiffs and Opt-In Plaintiffs' Counsel agree that they will not issue, send or post, or cause to be issued, sent or posted, any press release, posting (including any posting on Opt-In Plaintiffs' Counsel's firm website), email, or other verbal or written communication to any electronic, print, or digital media, blogs, or social networking sites, including but not limited to Facebook, LinkedIn and Twitter, (collectively, the "Media") regarding the Litigation, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to same.  If contacted by any member of the Media or any other individuals through any of the Media, Plaintiffs and/or Opt-In Plaintiffs' Counsel will simply state that the Litigation has been resolved and will provide no other comment whatsoever. Notwithstanding the terms of this Section, Defendant shall be free to make whatever disclosures it deems necessary and appropriate to its officers, attorneys, financial advisors, managers, or employees, provided those disclosures are truthful.

5.3   **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4   **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Opt-In Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees in bankruptcy, attorneys and assigns.

5.5   **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

5.6   **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7   **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8   **Blue Penciling.**  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9   **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of

law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10   **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and of the settlement contemplated thereby.

5.11   **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12   **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument. The failure of one or more Plaintiff to sign this Agreement does not affect its enforceability.

5.13   **Facsimile/Electronic Signatures.** Any party may execute this Agreement by signing on the designated signature block below and transmitting that signature page via facsimile or email to its counsel for transmission to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

DATED: January 27, 2013          HUB ENTERPRISES, INC.

                                 By: _____

                                 Its: _____

DATED: January ___, 2013         KIMBERLY FUNKE

                                 _____

12

law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10   **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and of the settlement contemplated thereby.

5.11   **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12   **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument. The failure of one or more Plaintiff to sign this Agreement does not affect its enforceability.

5.13   **Facsimile/Electronic Signatures.** Any party may execute this Agreement by signing on the designated signature block below and transmitting that signature page via facsimile or email to its counsel for transmission to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

DATED: January ___, 2013              HUB ENTERPRISES, INC.

                                      By: _____

                                      Its: _____

DATED: January 29, 2013               KIMBERLY FUNKE


                                      *Kimberly I. Funke* _____

12

DATED: January 28, 2013                MARSHALL WALKER

# EXHIBIT "A"

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY FUNKE and MARSHALL WALKER, individually and on behalf of all other similarly situated, | Civil Action No.: 11-CV-1274 (MAD) (DEP) |
| Plaintiffs, | |
| vs. | |
| HUB ENTERPRISES, INC., | |
| Defendant. | |

### STIPULATION AND ORDER OF FINAL DISMISSAL WITH PREJUDICE

This Court, having considered and inspected the Settlement Agreement and Release between the Parties in the above-captioned action, IT IS HEREBY ORDERED that: (1) the settlement is approved; and (2) the above-captioned action is hereby dismissed in its entirety, with prejudice, and with no award of attorneys' fees or costs by the Court to any party, other than attorneys' fees and expenses provided for in the Settlement Agreement.

SMITH, SOVIK, KENDRICK & SUGNET, P.C.
*Attorneys for Plaintiffs*
250 South Clinton Street, Suite 600
Syracuse, New York 13202
(315) 474-2911

By: _____
    Steven Ward Williams
    Brady J. O'Malley

Dated: January 31, 2013

JACKSON LEWIS LLP
*Attorneys for Defendants*
666 Third Avenue
New York, New York 10017
(212) 545-4000

By: _____
    Felice B. Ekelman
    Jason A. Zoldessy

Dated: January 30, 2013

SO ORDERED on this _____ day of _____, 2013.

_____
Hon. David E. Peebles
United States Magistrate Judge

# EXHIBIT "B"

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

KIMBERLY   FUNKE   and   MARSHALL   WALKER, individually and on behalf of all other similarly situated,

                    Plaintiffs,

            vs.

HUB ENTERPRISES, INC.,

                    Defendant.

Civil Action No.: 11-CV-1274 (MAD) (DEP)

## CLAIM FORM

TO:        All current or former HUB Investigators who previously joined the above-captioned lawsuit.

    As you know, between February 2012 and April 2012, you joined the above-captioned lawsuit brought against HUB Enterprises, Inc.  The parties have negotiated a settlement of this lawsuit, which has been approved by the Court.  In order to ensure that your monetary distribution is sent to the correct address, you may choose to submit the attached form confirming your participation.  Please note that your exact distribution is subject to change based upon the rate of participation in the settlement and other payments made from the Settlement Fund, and that certain taxes will be withheld from your share of the settlement payment.

    To submit the form, you must fill it out, sign it, and mail it to the Claims Administrator at _____, postmarked on or before **[60 days from mailing]**.

**OPT-IN PLAINTIFF VERIFICATION FORM**

*Funke et al. v. HUB Enterprises, Inc., 5:11-cv-01274, Northern District of New York*

Please type or print in ink the following information:

1.  I, _____, wish to receive a settlement check in
    the above-captioned action.

2.  My present address is _____.

3.  I agree to be bound by the settlement herein and, by my signature below, hereby agree
    upon the receipt of my settlement payment to the release of all claims under federal and
    state wage and hour laws during the period covered by this Settlement.

    I hereby confirm that I have consented to join the FLSA collective action against
    Defendant, *Funke v. HUB Enterprises, Inc., 5:11-cv-01274,* and upon receipt of
    my settlement payment release HUB from all wage and hour claims under the
    Fair Labor Standards Act and the New York Labor Law brought or which could
    have been brought in the Litigation, including but not limited to minimum wage
    and overtime wage claims.

    _____
    [signature, preferably in blue ink]

Signed on _____, 2013 at _____

Sign and return this form in the postage paid envelope to the Claims Administrator at
_____, in order to obtain your share of the settlement fund
that has been approved by the Court to be paid to you.

Please return this form by **[60 days from mailing]** in order to ensure that you receive monetary
compensation pursuant to the Settlement Agreement.

# EXHIBIT "C"

# <u>COURT-AUTHORIZED NOTICE OF SETTLEMENT</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>NORTHERN DISTRICT OF NEW YORK</u>

*This notice is not a solicitation from a Lawyer.*
*The Court Has Approved This Notice.*
*This Notice Relates to the Settlement of a Collective Action*

**TO:**   **IF YOU ARE OR WERE AN INVESTIGATOR WHO WORKED FOR HUB ENTERPRISES, INC. ("HUB" or "DEFENDANT"), YOU COULD RECEIVE PAYMENT FROM A COLLECTIVE ACTION**

- Kimberly Funke and Marshall Walker, a current and a former HUB insurance defense investigator, have sued HUB claiming that HUB failed to pay salaried employees the overtime wages required by law because it used the fluctuating workweek method of overtime compensation.

- The employees and HUB have settled. HUB has agreed to pay a settlement of $750,000 to current and former Investigators who participate in the settlement.

- Based on the formula created in the settlement, and depending on the rate of participation in the settlement, you are entitled to receive a minimum settlement payment of approximately $_____.

- Your legal rights may be affected, and you have a choice to make now as follows:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **ACCEPT THE AMOUNT ABOVE AND SUBMIT A CONSENT TO JOIN FORM** | **Complete Consent to Join Form.** By completing the enclosed Consent to Join Form, you will receive money allocated to you under the settlement and have no further obligations in connection with the lawsuit. Please note that by doing so you give up your right to separately sue Defendant for the same legal claims brought in this lawsuit. |
| **DO NOTHING** | By doing nothing, you retain your legal rights to bring a separate suit against Defendant (within the applicable statute of limitations period) for allegedly unpaid overtime compensation. However, you will not share in the settlement proceeds in this case. |

1

# BASIC INFORMATION

**1.   What is the purpose of this notice?**

The Court has ordered that this Notice be sent to you because (a) you worked as an Investigator for HUB between October 26, 2008 and the present (or October 26, 2005 and the present if you live(d) in New York during such employment) and (b) during some or all periods of your employment you were salaried and eligible to receive overtime pay pursuant to the fluctuating workweek method of overtime.  The purpose of this Notice is to inform you of your rights and options **and the deadlines to exercise them** under the terms of the settlement agreement.

**2.   What is this lawsuit about?**

Plaintiffs raised claims under the Fair Labor Standards Act and New York Labor Law on their own behalf and on behalf of similarly situated employees, alleging that HUB improperly paid them pursuant to the fluctuating workweek method of overtime pay. Specifically, Plaintiffs say that HUB paid its salaried employees "half time" for overtime instead of "time and a half."

**3.   Why is this a collective action?**

In a collective action, one or more individuals can bring a lawsuit not just on their own behalf but on behalf of others who are "similarly situated" to them. The Plaintiffs in this case brought this Lawsuit on behalf of themselves and other HUB employees whom they claim are "similarly situated" to them.

The Court authorized this case to proceed as a collective action under Section 216(b) of the Fair Labor Standards Act, which means that the Court has approved this Notice and authorized its mailing to all individuals who worked as Investigators during the time periods described above who did not previously join the lawsuit, so that they can decide whether to receive a settlement check.  Individuals who joined the case in response to a previous version of this Notice which was mailed in February 2012 are not receiving this Notice and automatically will receive settlement checks pursuant to the settlement agreement.

**4.   Why is there a settlement?**

The Court did not decide in favor of the Plaintiffs or the Defendant. Both sides believe they would have prevailed in the litigation. Instead, both sides agreed to a settlement and encourage all recipients of this Notice to receive a settlement check. That way the parties avoid the cost and risk of continued litigation.

# THE SETTLEMENT BENEFITS – WHAT YOU GET

### 5.   What does the settlement provide?

HUB has agreed to pay $750,000 into a settlement fund to be allocated among the Plaintiffs and Opt-In Plaintiffs. After certain deductions are made (such as for attorneys' fees and costs and the service payments described below), the net settlement amount will be divided based on: (1) how many weeks you worked at HUB as a salaried Investigator, and (2) whether you submit a Consent to Join form.

The settlement also provides for service payments of $5,000 each to the named Plaintiffs, Marshall Walker and Kimberly Funke, who brought the lawsuit. These service payments are in recognition of the many hours of service the Plaintiffs gave to the Collective Action by, among other things, supplying documents and helping the attorneys investigate and prosecute the claims on behalf of the Collective Action.

### 6.   How much will my payment be?

Based on the formula in the settlement agreement, you will be entitled to receive a minimum settlement payment of approximately $_____.   Some participants will receive two checks.   One payment will be compensation for wages, which is subject to taxes and withholdings.   The second payment is compensation for liquidated damages and prejudgment interest, which is not subject to taxation.   Your settlement amount will be no less than One Hundred Dollars ($100.00), even if the formula in the settlement agreement would otherwise provide for a lesser amount.   Your settlement share was calculated based on the number of weeks you were employed as a salaried Investigator for HUB from October 26, 2008 (or October 26, 2005 for New York employees) to _____, 2013.   **[Date of Court Approval.]**   The number of workweeks during the covered period includes all workweeks, including holiday-shortened weeks and weeks of vacation or sick leave.   Your settlement share is based on the calculation that you worked:

_____ workweeks as a salaried Investigator during the covered period.

### 7.   Can HUB and/or my current employer retaliate against me if I participate?

No. It is a violation of federal law for anyone to fire, discipline, or in any manner discriminate or retaliate against you for joining in the settlement process and receiving a settlement check.

# HOW YOU GET A PAYMENT

### 8.   How can I get my payment?

Enclosed with this Notice you will find a Consent to Join Form.  If you want to receive a payment as part of this settlement, you must submit a Consent to Join form. **If you do not properly complete and mail in a Consent to Join Form in a timely manner,**

**you will not receive any payment under the settlement.**

**THE CONSENT TO JOIN FORM MUST BE COMPLETED, SIGNED UNDER THE PENALTY OF PERJURY, AND RETURNED TO THE CLAIMS ADMINISTRATOR AT THE ADDRESS SET FORTH BELOW WITHIN 60 DAYS OF THE DATE THAT THIS NOTICE AND THE CONSENT TO JOIN FORM WERE MAILED TO YOU. THEREFORE, FOR YOUR CLAIM TO BE CONSIDERED TIMELY, YOUR CONSENT TO JOIN FORM MUST BE POSTMARKED NO LATER THAN [Insert Date]. CONSENT TO JOIN FORMS POSTMARKED AFTER THAT DATE WILL BE DEEMED UNTIMELY AND YOU WILL NOT RECEIVE YOUR SETTLEMENT SHARE.**

Consent to Join Forms must be mailed to:

[INSERT CLAIMS ADMINISTRATOR CONTACT]

However, if your address changes before you receive your settlement check, please contact the Claims Administrator at the address above to update your mailing address.

### 9.   When will I get my settlement payment?

Your payment will be mailed to you within 30 days of the deadline set forth above for submitting a Consent to Join.

# THE LAWYERS REPRESENTING YOU

### 10.   Do I have a lawyer in this case?

If you choose to participate in the settlement, you will be represented by Steven Williams and Brady O'Malley of Smith, Sovik, Kendrick & Sugnet, P.C., the law firm that has represented the Plaintiffs in this lawsuit and negotiated the settlement on their behalf. More information about the law firm, its practices, and its lawyers' experience are available at www.smithsovik.com.

### 11.   How will the lawyers be paid?

Pursuant to the settlement agreement, the lawyers will receive a settlement payment of $250,000 for their attorneys' fees, which is included in the total settlement payment of $750,000. The fees compensate the law firm for investigating the facts, litigating the case, and negotiating the settlement. Smith, Sovik, Kendrick & Sugnet, P.C. also will be paid out of the total settlement payment for their out-of-pocket costs and expenses in the amount of Thirty-Six Thousand Three Hundred Eighty-Four Dollars and Twenty-One Cents ($36,384.21).

**12. Are there more details about the settlement?**

You can obtain more information about the settlement or obtain a copy of the settlement agreement by contacting the Claims Administrator at:

**[INSERT CONTACT INFORMATION]**

DATED: _____, 2013

# EXHIBIT "D"

*Funke et al. v. HUB Enterprises, Inc.*, Case No. 5:11-cv-01274, United States District Court for the Northern District of New York

## CONSENT TO JOIN FORM

**TO RECEIVE A MONETARY PAYMENT AS PART OF THIS SETTLEMENT, YOU MUST COMPLETE AND <u>SIGN</u> THIS CONSENT TO JOIN FORM AND THEN MAIL IT, POSTAGE PAID, POSTMARKED ON OR BEFORE [DATE 60 DAYS AFTER NOTICE OF SETTLEMENT IS MAILED], AND ADDRESSED AS FOLLOWS:**

Funke et al. v. HUB Enterprises, Inc.

c/o _____, Claims Administrator

[Address]

[800-XXX-XXXX]

*You may send the Consent to Join Form to the Claims Administrator via first class mail. However, if the Claims Administrator determines that your Consent to Join was not received or was post-marked after the deadline, the sole acceptable proof that you submitted the Consent to Join to the Claims Administrator within the time period shall be an original receipt from the United States Postal Service evidencing the mailing of such Consent to Join by certified mail. As a result, you should strongly consider sending this Consent to Join to the Claims Administrator by certified mail, and take care to retain the receipt.*

//////////////////-[____] [CLAIM #]

[First] [Middle] [Last]

[Address]

[City], [State] [Zip]

## I.   <u>CONTACT INFORMATION.</u>

Leaving an email address means you agree to receive further communications via email.

Name:_____

Address:_____

_____

Telephone: home: (____) ____-_____

Telephone: work/cell: (____) ____-_____

Email: _____

## II.   **EMPLOYMENT INFORMATION.**

Failure to provide the following required information will render your Consent to Join form defective, and it will not be considered if not timely corrected.

1.  Were you employed as a salaried Investigator by HUB Enterprises, Inc. ("Defendant") at some point between October 26, 2008 (October 26, 2005 for New York employees) and **[date of Court approval]**?

Circle one:   YES   NO

2.  Do you wish to participate in the monetary recovery pursuant to the Settlement Agreement in *Funke et al. v. HUB Enterprises, Inc.*, Case No. 5:11-cv-01274, United States District Court for the Northern District of New York (the "Lawsuit")?

Circle one:   YES   NO

3.  **It is expected that your share of the settlement will be a minimum of approximately $_____. This is an estimate only, and it is subject to change.**  Paragraph 6 of the Notice of Settlement illustrates how your individual recovery will be calculated.

4.  If your wages are subject to supplemental tax withholding as a result of a lien or outstanding debt, or if you are currently a party in a bankruptcy proceeding, please indicate so by checking this box:  [ _____ ]

My share of the recovery shall be mailed to me at the following address (if different from the pre-printed address above):

Name:   _____

Address:   _____

City:   _____

State:   _____

Zip:   _____

## III.   **DECLARATION AND RELEASE OF CLAIMS.**

I declare under penalty of perjury that I am currently or was employed by the Defendant as a salaried Investigator at some point between October 26, 2008 (October 26, 2005 for New York employees) and _____ **[date of Court approval]**.

By signing and submitting this Consent to Join, I agree to participate in this settlement and agree that except for the obligations imposed by this settlement, upon receipt of my settlement payment, Defendant shall be forever released and discharged as fully set forth in the Settlement Agreement, including being released and discharged from all individual and/or class-

wide claims or causes of action, which have been asserted in the Lawsuit, including but not limited to all claims under state or federal law for alleged failure to pay wages or overtime compensation, and I shall be barred and enjoined from suing the Releasees (as defined in the Settlement Agreement) for any liability in any way related to or arising out of any Released Claim.

I declare under penalty of perjury that the foregoing is true, correct, and complete.

Executed this ____ day of _____ (month), 2013, at _____ (city), _____ (state).

X_____
    (Sign Your Name Here)

**Name:** _____

(Print)    Last                         First                       Middle

Social Security No. (last four digits): ___ ___ ___ ___